S. L. CROWELL ET AL. v. THE CITY OF MONROE.

(Filed 27 April, 1910.)

**Cities and Towns—Closing Streets—Public Safety—Damnum Absque Injuria.**

> The courts will not interfere with the exercise of a discretionary power conferred upon a town by its charter in temporarily closing a street at a dangerous railroad crossing, and ordering an overhead bridge to be built there for the safety and convenience of the public, and damages thereby caused to the lands of a citizen is *damnum absque injuria,* in the absence of express legislation permitting its recovery.

HOKE, J., dissenting.

APPEAL from *Lyon, J.,* at February Term, 1910, of UNION.

Civil action for damages for wrongfully closing a public street. These issues were submitted:

1. Is the *feme* plaintiff the owner of the lots and property, as alleged in the complaint? Answer: Yes.

2. Has the defendant wrongfully closed, or caused to be closed, that portion of Church Street on which *feme* plaintiff's property abuts, as alleged in the complaint? Answer: Yes.

3. Has the defendant, by closing Church Street at the railroad crossing, interfered with the ingress and egress of plaintiff's property, as alleged in the complaint? Answer: Yes.

CROWELL *v.* MONROE.

4. What damage, if any, has the plaintiff sustained by reason of the closing of Church Street by the defendant, as alleged in the complaint? Answer: $500.

From a judgment for the plaintiff, the defendant appealed.

*A. M. Stack* and *J. J. Parker* for plaintiff.
*Redwine & Sikes* and *John Vann* for defendant.

BROWN, J. The case of the plaintiff is based upon the contention that the defendant municipality wrongfully and unlawfully closed Church Street where it crosses the tracks of the Seaboard Air Line Railway, whereby plaintiff was subject to inconvenience and damage, for which she avers the defendant is liable.

Upon a careful examination of the record, and giving due consideration to the arguments of the learned counsel for plaintiff, we are of opinion that the motion to nonsuit should have been allowed.

The evidence shows that Church Street proper stopped at the old corporation limits on south side of the railroad. Beyond the corporate limits a pathway or alley crossed the tracks of the company, which was used as a public crossing, but that it has been dedicated as a public street does not appear. This continuation of Church Street, however, where it crosses the tracks, was directed to be discontinued by defendant.

Assuming, for the purposes of this case, that it was a public street of the city of Monroe, upon the evidence, we think the municipality is not liable in damages.

The several ordinances in evidence show that the crossing was regarded as a dangerous one, so that the board of aldermen, in 1903, directed the railroad company to maintain gates and a gatekeeper at it. The ordinances subsequently enacted show that this crossing was discontinued for public safety and convenience. The ordinance reads as follows: "It is ordered that a street of sufficient width to accommodate the public travel be opened from Crowell Street between Church and Depot streets to the right of way of Seaboard Air Line Railway, so as to connect with the overhead bridge to be erected by the Seaboard Air Line Railway across its track, to be built of iron and plans and specifications to be approved by the Board of Aldermen of the City of Monroe. It is ordered that when the said iron bridge is built over the tracks of the Seaboard Air Line Railway, Church Street and Depot Street, or the street passing the present freight depot, shall be closed from the right of way on the south side of tracks to the right of way

CROWELL *v.* MONROE.

on the north side of tracks, and shall remain closed so long as the Seaboard Air Line Railway shall keep the overhead bridge in good repair."

Afterwards, another ordinance was passed, discontinuing this crossing, to take effect at once. The defendant offered to show that the overhead bridge was being erected, but his Honor excluded the evidence, erroneously, we think; but as the purpose for which the crossing was discontinued appears upon the face of the ordinance, the ruling is immaterial.

The record does not present the question of taking private property for public use, nor the question of the permanent closing of a public street in which an abutting owner has certain recognized rights. *Moose v. Carson,* 104 N. C., 431. The facts disclose nothing more than a closing of a railway crossing in order that an overhead bridge immediately above the crossing may be erected for the use of the public and evidently for public safety and convenience. It may be that plaintiff is inconvenienced and temporarily damaged, but it is *damnum absque injuria.*

This is a matter committed by the charter of the city to the sound discretion of its authorities. Private Laws 1899, ch. 352, sec. 22. With the exercise of this discretion the courts will not interfere. It is not a taking of private property for public use, and in the absence of express statutory law decreeing compensation, none can be recovered. 2 Dillon on Mun. Corp., sec. 1040; *Dorsey v. Henderson,* 148 N. C., 423, and cases cited; *Cherry v. Fewell,* 26 S. E. Rep., 798; *St. Louis v. O'Flynn,* 119 Ill., 200; *Smith v. Corp. of Washington,* 61 U. S. 134.

Reversed and action dismissed.

HOKE, J., *dissenting:* I make no special objection to the propositions of law rather generally stated in the opinion of the Court, but do not think that they apply to any facts disclosed in the record, and am of opinion that the direction of a nonsuit, as adjudged by the Court, will work a grave injustice to the plaintiff.

There was abundant testimony that Church Street was a public street leading from the main portion of the town of Monroe, N. C., to plaintiff's property, and crossing the tracks of the Seaboard Air Line Railway Company; that it had been dedicated and accepted and worked and used as such street for twenty-five years or more; that the municipal authorities had ordered the closing of the street across the railroad tracks, and that, under and by virtue of this ordinance, the street at that

152—26

point had been closed and turned into a railroad yard, and the grade of the approach changed so that there was no longer any passway from the town along said street to plaintiff's property; that by reason of these obstructions, the ingress and egress to and from plaintiff's property had been impaired and interrupted and causing damage to the same of 30 to 40 per cent of its value.

Speaking to this interruption, J. A. Crowell testified as follows: "Railroad has blockaded street where it crossed. Impossible to cross, day or night, on account of being blocked. There are ten tracks. There were only three or four tracks up to three or four years ago. Wife's property has been damaged. No way to get in or out without trespassing."

And G. W. Redfearn said: "The closing of Church Street has taken the property off of public street."

On this evidence, and other testimony relevant to the inquiry, and under a charge free from error, the jury have rendered the following verdict:

"1. Is the *feme* plaintiff the owner of the lots and property as alleged in the complaint? Answer: Yes.

"2. Has the defendant wrongfully closed, or caused to be closed, that portion of Church Street on which *feme* plaintiff's property abuts, as alleged in the complaint? Answer: Yes.

"3. Has the defendant, by closing Church Street at the railroad crossing, interfered with the ingress and egress of plaintiff's property, as alleged in the complaint? Answer: Yes.

"4. What damages, if any, has the plaintiff sustained by reason of the closing of Church Street by the defendant, as alleged in the complaint? Answer: $500."

And instead of awarding judgment on the verdict, a nonsuit is directed by the Court.

There was no serious question raised below as to plaintiff having an easement in the street. There was no serious question raised, and no evidence tending to show, that its user had not been impaired and interrupted by defendant to plaintiff's damage.

R. V. Houston, a witness for plaintiff, testified: "I know plaintiff's property. My father owned this property. He cut it up into lots and streets. This was one of the lots and streets. My father gave railroad right of way. Street or road in front of plaintiff's house was used by public twenty-five or thirty years. Platform built in 1874. Railroad came here in 1872, thirty-six years ago. Street was used by the public from then to the time it was closed three or four years ago. Closing of crossing has injured plaintiff's property. Plaintiff's property

CROWELL *v.* MONROE.

has been damaged 40 or 50 per cent in value. It is worth $1,500 now. It would be worth $3,000 if street were open."

G. W. Redfearn testified as follows: "I know property. Church Street has been closed and plaintiff's property been damaged 35 or 40 per cent. I have lived here forty years. Street kept open since I have been here, until three years ago. Had a guano house there for a while. City works street on north side of railroad to Winchester Avenue. Curve is on railroad's right of way."

There is not in the record any evidence tending to show that a bridge over the track had been constructed or stipulated for by the town, except a suggestion to that effect in the order of the board on 11 January, 1906, and it was under the order of 17 May that the street was arbitrarily closed. Nor is it anywhere shown that the railroad, or any one else, is under a binding obligation to construct such bridge.

The ordinance closing the street and shutting off plaintiff, or the occupants of his property, from access to the town, except by a roundabout and inconvenient route, passing through a back alley, has been in existence now since May, 1906, and, so far as the testimony shows, no bridge has been built, and none had been commenced at the time of this action, begun in January, 1909, a period of more than two and one-half years. It may be that if a bridge is even now being built, affording plaintiff a convenient access to his property, that evidence to that effect should be received on the issues as to damages; but I am unable to perceive how an order of nonsuit can be justified on this record; or plaintiff's cause of action, established by the verdict, should be disregarded and set at naught by the Court.

In *Moose v. Carson,* 104 N. C., 434, an authority recognized in the opinion of the Court, *Avery, J.,* delivering the opinion, said:

"We may deduce from the rules of law already stated the further principle that the owners of a lot having a property or easement appurtenant in the adjacent streets, with reference to the advantages of which they expended their money for the land and the improvements put upon it, cannot be deprived of their rights by a sale for the benefit of the town that was, in effect, though not nominally, one of the grantors through whom they claim title; nor has the Legislature the power to deprive them of such appurtenant rights by authorizing such grantor, whether a person or a corporation, to again enter upon and sell such streets to others. The General Assembly cannot, without a violation of the Constitution, divest or provide for divesting, by law, the right of a person to his property, for the purpose of

vesting such right in another person or corporation merely for private use to all, and it has no power, under the organic law, to provide for taking private property for public purposes without just compensation, to be ascertained in a mode pointed out by the law."

Applying this principle to the facts established, the defendant in the present case had no right to close the street affording plaintiff access to his property, without making him compensation; and, under the present decision, this compensation has been denied him.