GEORGE COLVIN AND RILEY COLVIN v. TALLASSEE POWER COMPANY.

(Filed 10 September, 1930.)

1. **Highways C a—Power of commissioners to abandon county highway must be exercised strictly according to provisions of statute.**

   Where the county commissioners have the statutory power to close and abandon a public county highway, the method prescribed by statute must be complied with, and in this case *held:* a resolution abandoning a road without giving notice and an opportunity to be heard was not a sufficient compliance with the statute.

2. **Highways D a—Agreement of commissions to obstruction of road in this case was ineffective, and obstruction was wrongful.**

   An agreement by the board of county commissioners having authority to close a public road of a county that a power company might obstruct the road by ponding water thereon is not effective when the abandonment of the road by the commissioners has not been done in accordance with the statutory provisions, and the subsequent obstruction of the road by the power company is wrongful.

3. **Easements A a—Evidence of adverse use of certain land as a road creating an easement thereover held sufficient.**

   Evidence that the plaintiff had used a road upon the private land of the defendant for ingress or egress to his own land for a sufficient period of

12—199

time, had worked upon it, and used it continuously, openly and adversely, is *held* sufficient evidence of adverse user to be submitted to the jury upon the issue as to whether he had acquired an easement thereover.

**4. Same—Adverse user must be continuous and adverse to owner in order to create an easement thereover.**

In order for the owners of land along a roadway to acquire prescriptive right of ingress and egress thereover the use must be continuous and adverse to the owner of the road, and for a sufficient length of time to confer the right, and the fact that in going over the road at some period bars had to be laid down is for the jury to consider upon the question of adverse user.

**5. Highways D a—Party suffering special damage may recover for wrong-ful obstruction of road.**

Where the plaintiffs' only means of ingress and egress to this land is destroyed by the wrongful obstruction of a highway he has suffered special damage differing not only in degree, but also in kind from that suffered by the community at large, and he is entitled to recover of the one wrongfully obstructing the road his damages resulting therefrom.

APPEAL by defendant from *Schenck, J.,* and a jury, at September Term, 1929, of GRAHAM. No error.

Plaintiffs bring this action against defendant for damages for flooding the roads which deprived them of ingress and egress to their homes. The plaintiffs allege that "The defendant, during the year 1927, constructed a large concrete dam across Cheoah River just below the mouth of Santeetlah Creek, in Graham County, and about 9 miles below Robbinsville, for the purpose of impounding the waters of said river and its tributaries, creating a reserve basin and lake which covers the entire river basin of Cheoah River and Santeetlah Creek for several miles, covering and flooding with water all of the public roads and passways therein. . . . That prior to, and up until the defendant wrongfully constructed its dam and flooded with water the said basin and areas of land, plaintiffs' land and premises was easily and amply accessible by means of a public road which connected with the old Turnpike or County Road at Stump Ford, near the mouth of Santeetlah Creek and led up said Santeetlah Creek to the plaintiffs' homes; that the said public road has been publicly maintained and used by the citizens in that neighborhood and the public at large for a period of more than forty (40) years and accommodated the community and neighborhood of plaintiffs' residence. That the said public road was the only means and way of access by wagon or other vehicle and the only road over which transportation and hauling could be done to and from plaintiffs' home. That the defendant, by the construction of its said dam on the Cheoah River, impounding the water thereof and creating a storage basin and lake which extends from the dam up to within about a mile of Robbinsville and up Santeetlah Creek to some distance below plain-

tiffs' home, wrongfully and without consent of the citizens of the neighborhood or any lawful right, flooded the aforesaid public road which accommodated plaintiffs' home and land covering the said road and the entire basin of both sides of the creek through which the road passed, under many feet of water, thereby wrongfully and unlawfully blockading, obstructing and destroying the said public road and every means of access, egress and ingress to plaintiffs' home and premises, leaving the plaintiffs' said home and premises isolated and inaccessible to any of the other neighborhood and community's mills, stores, postoffice mail routes and the only way since the defendant obstructed and destroyed the public road, for plaintiffs to or the members of their families, their friends, guests, or public to get to or from their home, is by traveling through the forest without any road or right of passway. . . . That by reason of the unlawful and wrongful flooding and submerging of the said public road leading down Cheoah River and up Santeetlah Creek to plaintiffs' premises, plaintiffs for many months have been compelled to remain in an isolated condition and at a great loss of time and suffering have been compelled to travel across a rough mountainside and top with nothing but a rough foot-path over which to travel, in order to get provisions, medicine, or their mail or any communication with other neighbors, to plaintiffs' great damage to the extent of $500. That by reason of the defendant's wrongful and unlawful blockading, obstructing and flooding of said public road and the plaintiffs' only roadway, the plaintiffs' land and premises have been damaged in a large sum which they estimate at $4,000." Demand for damages.

The defendant is a corporation engaged in the production of hydroelectric power. As a defense it alleges: "That it entered into a contract with the road authorities of Graham County by the terms of which it agreed to build and construct a road above the line of its proposed reservoir of the width and grade therein specified and that the said road authorities of Graham County agreed upon the construction of said road and that they would abandon said roads which were to be flooded by the said reservoir; and that this defendant then complied with said contract, and that the said road authorities did abandon said roads, and that there were no public roads leading to or near plaintiffs' land, as alleged in the complaint, at the time of the flooding thereof by this defendant. . . . It admits that it has flooded certain property belonging to it in the Santeetlah reservoir, but says that it has not entered upon or obstructed or blockaded or destroyed any public road, and that it had in no way trespassed on the property or premises of these plaintiffs."

The plaintiffs replying say that there has never been any abandonment or discontinuance of the road mentioned in a legal manner by the proper authorities.

The evidence tended to show that plaintiffs owned a farm in Graham County, N. C., where they and their families resided, near the Santeetlah Creek in Yellow Creek Township. The evidence of plaintiff George Colvin was to the effect: "I know where the Santeetlah Dam is located. It is about a mile and a quarter below the mouth of Santeetlah Creek on the Cheoah River. It is about a mile and a quarter from the mouth of Santeetlah Creek to the mouth of Watauga Branch and about a half mile from the mouth of the branch up the branch to where I live. There were roads leading to the property before the dam was constructed and the water impounded. There was a wagon road from my house to the Santeetlah Road which was used by myself and others. . . . The road up Santeetlah Creek was used by the public and was a good road. . . . I have known it for some twenty years. . . . The gates were closed in the dam about the 7th of December, 1927. The water impounded by the closing of the gate covered the road up Santeetlah Creek and up Watauga Branch to possibly 400 yards of our line. The entire road up Santeetlah Creek is flooded. I do not now have any means of ingress or egress from my property except by pathway, either walking or riding a horse. This pathway leads below the dam. I own a wagon and team, and before the dam was constructed traveled by wagon from my house to Robbinsville. The road up Santeetlah Creek was kept up by a road overseer and hands."

This evidence was corroborated by several witnesses. It was in evidence that the road leading up Watauga (Watoogah) Branch was opened up about 1887 or 1888, to move timber and a right of way obtained for that purpose and "was used continuously by the people who lived on the branch and anybody else who wanted to go up and down on it." It was in evidence that the highway commissioners of Yellow Creek Township never, in meeting assembled, authorized the road in controversy to be closed or discontinued. It is admitted by defendant that prior to 1910 and up to 5 December, 1927, there was a public road known as the Santeetlah Road running up and down Santeetlah River.

The issues submitted to the jury and their answers thereto were as follows:

"1. Are the plaintiffs, George Colvin and Riley Colvin, the owners of an interest in the lands described in the complaint? Answer: Yes.

2. If so, what interest are said plaintiffs the owners of? Answer: Entire.

3. Did the defendants, the Tallassee Power Company, diminish the value of said lands by flooding the roads leading to and from said lands? Answer: Yes.

4. If so, was said diminution by the defendant, Tallassee Power Company wrongful? Answer: Yes.

5. What amount, if any, are the plaintiffs, George Colvin and Riley Colvin, entitled to recover of the defendant, Tallassee Power Company? Answer: $1,400."

The other necessary evidence will be set forth in the opinion.

*Morphew & Morphew and T. M. Jenkins for plaintiffs.*
*R. L. Smith, S. W. Black, R. L. Phillips and Bryson & Bryson for defendant.*

CLARKSON, J. At the close of plaintiffs' evidence and at the close of all the evidence defendant made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled the motions, and in this we can see no error.

The questions involved: First, Was the obstruction and flooding by the defendant of the roads which gave plaintiffs ingress and egress to their land wrongful? We think so.

It is admitted by defendant that prior to 1910, and up to 5 December, 1927, there was a public road, known as the Santeetlah Road, which led into the old State Turnpike Road at Stump Ford, which traversed Graham County by Robbinsville. As to the road up Watauga (Watoogah) Branch which plaintiffs used to travel from their home to the Santeetlah Road, thence to the Turnpike, the main public highway, plaintiffs claimed an easement by adverse user, which defendant disputed. These two roads were flooded by defendant up to within 400 yards of plaintiffs' home and prevented plaintiffs ingress and egress over them to the main public highway.

A legal question arises as to the closing of the Santeetlah Road. Defendant claimed that they had a contract with the commissioners of Graham County and the road commissioners of certain townships whereby this public road that existed up to this time, under certain conditions, would be abandoned and flooded. The agreement was made 2 February, 1920. We need not discuss this agreement on the minutes of the board of county commissioners of Graham County, as the record discloses that the road in controversy was in Yellow Creek Township.

We find in Public-Local Laws, 1919, ch. 197, part sec. 5, the following: "Said highway commission shall have the same supervision, powers and rights in respect to all public roads and bridges in Yellow Creek Township as has heretofore been vested in the board of county commissioners of Graham County," etc.

The record evidence discloses that there was no legal meeting of the highway commission of Yellow Creek Township to discontinue this road. *O'Neal v. Wake County*, 196 N. C., 184. Of course it goes without saying that if there had been a legal meeting the discontinuance of the road had to be governed by the law in such cases. In the minutes

of the board of commissioners of Graham County, held years after 5 December, 1927, we find the following, which recognized the power in the highway commission of Yellow Creek Township: "Whereas, since the passage of the above resolutions and orders (2 February, 1920) the highway commission of Yellow Creek Township has been abolished and its authority vested in the board of county commissioners of Graham County, which takes the place of and has all the authority heretofore conferred upon the highway commission of Yellow Creek Township." On 5 December, 1927, the board of county commissioners of Graham County, after making certain recitals, passed the following: "Do hereby collectively and severally condemn and abandon and turn over to said company all their rights, title and interest in and to all those parts of the present public roads or any public roads which have been constructed by them or any or under their authority or jurisdiction of them within the flooded areas, and do hereby authorize the closing of and the disuse of said roads and do hereby authorize and empower said company to flood same."

The record discloses that no petition was filed or notice given or hearing had. On 2 January, 1928, the board of county commissioners of Graham County passed a resolution rescinding and annulling the resolution of 5 December, 1927. The resolution reciting: "It appears that no petition has been filed for closing or abandoning any of the said public roads affected by said order, and that no notice of the same has been given, and that no public hearing has been given for the purpose, as this board has since been informed and advised is required by law." The board of county commissioners of Graham County that passed it rescinded it, and thought it illegal, and we are of the same opinion.

In regard to the road up Watauga Branch, which did not go through but by plaintiffs' land, and which was used for ingress and egress—we think the evidence sufficient to go to the jury as to adverse user. It was in evidence that this road was built and opened up about 1887 or 1888 to move timber and a right of way obtained and plaintiffs and those under whom they claim have used the road and it has been worked by those who used it and been used by the public in general ever since. The right of way was given to move timber off the land now owned by plaintiffs and others, and used for that purpose and continuously used ever since. "From that time on the road up Watauga Branch was used continuously by the people who lived on that branch and anybody else who wanted to go up and down it." The record discloses that in all the years since 1887 or 1888 no landowner through whose land this road ran made any objection to its use by plaintiffs or others.

On this aspect the court below charged: "We come now to determine was there an adverse user for the requisite period, and in this connec-

tion the court charges you as a matter of law that to establish adverse use there must be of the roadway sought to be shown as a private way, a clear, definite, positive and notorious use thereof. Such use must be continuous, adverse, hostile and exclusive during the entire statutory period of twenty years, with an intention on the part of the user to claim a private way over the lands over which such roadway ran. A use by permission or license for such period would be insufficient to establish a private way, and any other use other than an adverse use would likewise be insufficient, the use must be with the intent to hold to the exclusion of others, and not by sufferance of others."

We think the charge is in accordance with the law in this jurisdiction. In *Gruber v. Eubank,* 197 N. C., at p. 285, it is said: "The legal essentials for creating an easement by prescription are thus stated in 9 R. C. L., 772: 'To establish an easement by prescription it must be, first, continued and uninterrupted use or enjoyment; second, identity of the thing enjoyed; third, a claim of right adverse to the owner of the soil, known to and acquiesced in by him.' *Draper v. Conner,* 187 N. C., 18, 121 S. E., 29; *Durham v. Wright,* 190 N. C., 568, 130 S. E., 161."

The fact that in going over the road at some period bars had to be laid down was for the jury to consider on adverse user.

In *Grant v. Power Co.,* 196 N. C., at p. 619, speaking to the subject: "It is well settled, of course, in this State, that the right to a private way over and across the land of another may be acquired as against the owner of the land, by a continuous adverse use for twenty years, and that a mere user for the required period is not sufficient to confer the right."

*Second.* Can plaintiffs maintain an action against defendant for damages resulting from the wrongful obstruction of said roads? We think so.

The following principle is applicable in this action—13 R. C. L., "Highways," p. 231, part sec. 195: "It is generally held that one whose means of ingress to and egress from his property is completely cut off by an obstruction suffers a special injury, different from that suffered by the public at large, as, for example, where the obstructed way affords the only means of getting to market with the products of his adjoining farm. It is not material whether access is completely cut off from every point, or whether the obstruction merely cuts off the means of reaching particular places with which it is necessary or advantageous for the plaintiff to communicate."

This question was not directly presented in the *Grant case, supra,* but the opinion cites the principle above enunciated, as taken from 29 C. J., at pages 631 and 632, as follows: "It is said that an action for

damages against one who injures a public highway may be maintained by a private person, if·he has sustained special damages, differing not merely in degree, but in kind from that suffered by the community at large, as where access to plaintiff's property is cut off. Many decisions are cited in support of the text. As the question is not presented on this appeal, we do not decide it. It would seem, however, that plaintiff sustained special damages in this case, caused by defendant's flooding the road and cartways upon which he was dependent for access to his land." *Grant case, supra,* p. 619.

In the present action plaintiffs and their families are marooned far up on the mountain side by defendant flooding the roads. The roads heretofore used for ingress and egress for over forty years by plaintiffs and those under whom they claim, covered with water to within 400 yards of plaintiff's land, cutting off their ingress and egress to the main turnpike highway. The Santeetlah public road totally submerged with water and plaintiffs' private way also covered with water for some distance. The court below gave a most minute and detailed charge covering the law on every phase of the evidence. The contentions were given fairly to both sides.

We have examined the exceptions and assignments of error made by defendant, to admission and rejection of evidence, to refusal to submit issues tendered by defendant and to the charge of the court, and can find no prejudicial or reversible error.

No error.