W. A. HIATT AND HIS WIFE, MATTIE D. HIATT, v. CITY OF GREENSBORO.

(Filed 21 October, 1931.)

1. **Municipal Corporations I a—Abutting owner has easement in city street.**

    While the public has, ordinarily, only the right to the use of public streets for travel so long as the streets are maintained for that purpose by public authority, an abutting owner has an easement in the street to have it kept open as a means of egress and ingress to and from his property, and he may not be deprived of his right without just compensation.

2. **Eminent Domain A c—Held: abutting owner was entitled to compensation for damage resulting from closing street at railroad crossing.**

    Where a city, with statutory authority, makes a contract with a railroad company whereby the city agrees to build certain underpasses across certain of its streets and to close certain other streets where they cross the railroad tracks at grade in the city limits, and in pursuance of the contract the city closes a street at a grade crossing, *Held:* an owner of a lot abutting the street closed under the agreement, whose property is thus placed in a *cul de sac* and cut off from the use of the street as a means of travel to and from the business section of the city and made less valuable by reason of the stopping of traffic along the street from one direction, is entitled to compensation for the damage to his property by reason thereof, less any special benefits, he having suffered special damage not common to the public generally.

    BROGDEN, J., dissents.

APPEAL by defendant from *Small, J.,* at October Term, 1930, of GUILFORD. No error.

Plaintiffs are the owners and in possession of a lot of land situate on the east side of South Spring Street, in the city of Greensboro. This lot fronts on said street sixty feet and has a depth of about one hundred and twelve feet. There is located on this lot a one-story, frame dwelling-house, containing five rooms.

Plaintiffs have owned and have occupied said property as their home since 1914. The desirability of this property for residential purposes,

and its market value are largely dependent upon its location on South Spring Street, which is now and was at the time plaintiff purchased said property, included within the general system of streets established and maintained by the city of Greensboro. The said street is and has been for more than thirty years one of the improved, hard-surfaced streets of the city, and extends in a northerly direction from West Lee Street in the southern, to Battle Ground Avenue in the northern section of the city. The direct route from plaintiffs' property to the northern or business section of the city is over and along Spring Street, which is known as South Spring Street in the southern, and as North Spring Street in the northern section of the city.

As Spring Street extends in a northerly direction from West Lee Street through the city of Greensboro to Battle Ground Avenue, the said street intersects and crosses numerous streets, which run east and west through the city, and which are parallel with West Lee Street and Battle Ground Avenue. About 500 feet to the north of plaintiffs' property, South Spring Street intersects and crosses the main line tracks of the North Carolina Railroad Company and the Southern Railway Company, which run east and west through the city of Greensboro. There is no street running east and west between plaintiffs' property and the tracks of said railroad companies. West Lee Street, which runs east and west through the city, is about 150 feet to the south of plaintiffs' property. This property is, therefore, situate on the east side of South Spring Street in a block, which is about 650 feet in length, and is bounded on the north by the railroad tracks, and on the south by West Lee Street. Prior to the closing of South Spring Street by the city of Greensboro, at its intersection with the railroad tracks, there was much travel over and along Spring Street from West Lee Street in a northerly direction toward Battle Ground Avenue, and from Battle Ground Avenue and the streets of the city, which run east and west and cross Spring Street, north of the railroad tracks, in a southerly direction toward West Lee Street. The travel in both directions on Spring Street passed plaintiffs' property and enhanced its value for residential and other purposes. Spring Street was a direct and convenient route for travel through the city from the northern to the southern, and from the southern to the northern section of the city. There were other streets running north and south through the city, parallel with Spring Street, which intersected the tracks of the North Carolina Railroad Company and with Southern Railway Company.

Prior to November, 1926, there were sixteen railroad crossings in the city of Greensboro, resulting from the intersection of the tracks of the North Carolina Railroad Company and the Southern Railway Com-

pany by the streets of the city, which run north and south. All these crossings were at grade, and because of the heavy travel over and along the said streets, which was constantly increasing in volume, and because of the large number of trains, both passenger and freight, operated daily over and along said railroad tracks, the said crossings were menaces to both life and property. They also retarded travel over and along the said streets, and hindered the development of the southern section of the city, which was connected by these streets with its northern or business section.

On 29 November, 1926, the city of Greensboro, acting through its governing body, the city council, entered into a contract or agreement with the Southern Railway Company, lessee of the North Carolina Railroad Company, by which the said railway company agreed to pay one-half of the cost and expense to be incurred by the city in the elimination of said grade crossings, by means of underpasses and overhead bridges to be constructed by the city. This agreement was amended by a supplemental agreement between the city and said railway company, dated 27 January, 1927.

At its regular session held in 1927, the General Assembly of North Carolina enacted a statute which is chapter 158, Private Laws of North Carolina, 1927, and is as follows:

"An act to validate a contract between the city of Greensboro and the Southern Railway Company, providing for the elimination of certain grade crossings in the city of Greensboro.

*The General Assembly of North Carolina do enact:*

Section 1. That there be and hereby is confirmed and declared valid in all respects a certain contract or agreement dated 29 November, 1926, as amended by a supplemental agreement dated 27 January, 1927, between the city of Greensboro and the Southern Railway Company, providing, among other things, that said city shall build certain underpasses at certain grade crossings of streets and tracks of said company in accordance with a general plan map heretofore determined upon and with detailed plans and specifications to be hereafter prepared by certain architects and engineers, subject to the approval of the said city and company, or by arbitration, one-half of the costs thereof, including damages, to be paid said city by said company over a period of years with interest, and providing, also, that the city shall permanently close and forever abandon certain other grade crossings of streets and tracks of said company, subject to the right of the governing body in the interest of requirements of public interest or necessity at any time in the future to re-open any such closed crossing or crossings, and to open elsewhere within the corporate limits any street or streets across

the property and tracks of the company, upon condition that at the crossing so opened or reopened the city shall construct and maintain at its own cost an underpass, for which the railway company shall grant a suitable easement, or shall pay to the company as liquidated damages an amount equal to the cost of any underpass which the city shall so fail to construct.

Section 2. That all laws and parts of laws in conflict with this act are hereby repealed in so far as they affect this act.

Section 3. That this act shall be in effect from and after its ratification.

Ratified this 4 March, A.D. 1927."

Pursuant to its contract or agreement with the Southern Railway Company and under the authority of the statute enacted by the General Assembly of this State, the city of Greensboro caused to be constructed at certain grade crossings within said city underpasses or overhead bridges, and thereby eliminated said grade crossings. On 2 July, 1929, with respect to the grade crossing at the intersection of the tracks of the railroad companies by South Spring Street, the city council of the city of Greensboro, adopted an ordinance as follows:

"An ordinance closing Spring Street where the same crosses the main line tracks of the Southern Railway Company.

Whereas Spring Street crosses at grade level the main line tracks of the Southern Railway Company; and

Whereas, an underpass has been constructed beneath said railroad tracks at a point between Spring and Cedar streets which is less than one-half of a block west of Spring Street; and,

Whereas, the said underpass is convenient and easily accessible to travel and traffic on Spring Street; and,

Whereas, the present grade crossing on Spring Street across the main line tracks of the Southern Railway Company is extremely dangerous and constitutes a menace to life and property; and,

Whereas, in the opinion of the city council of the city of Greensboro, public necessity requires the closing of the said grade crossing on Spring Street;

Now, therefore, be it ordained by the city council of the city of Greensboro;

Section 1. That the right of way of Spring Street between the north side and the south side of the railroad tracks of the Southern Railway Company be and the same is hereby closed and discontinued for public travel so long as the underpass beneath said tracks at a point between Spring and Cedar streets continues to be maintained in a good, safe and proper condition.

Section 2. That this ordinance is enacted in the interest of public safety and shall become effective immediately upon its publication."

Pursuant to said ordinance, the city of Greensboro has closed Spring Street by the erection across said street of two fences, one just to the south and the other just to the north of the tracks of the Southern Railway Company. By the closing of said street, plaintiffs are deprived of its use as a direct route from their property situate on the east side of South Spring Street to the northern or business section of the city of Greensboro, and travel from the northern section of the city toward West Lee Street is diverted from Spring Street north of the railroad tracks, so that such travel no longer passes the property of the plaintiffs. There is no longer any travel from West Lee Street in a northerly direction over and along South Spring Street. Plaintiffs' property is no longer on a public street of the city of Greensboro, affording access thereto from both the northern and southern sections of the city; it is in a *cul de sac,* or blind alley. *S. v. Gross,* 119 N. C., 868, 26 S. E., 91.

The charter of the city of Greensboro, which is chapter 37, Private Laws of North Carolina, 1923, was amended by chapter 230, Private Laws of North Carolina, 1927, and contains the following provision:

"If any claim against the city for damages resulting to the real property of any person, firm or corporation from the construction of any overpass or underpass in the city or from the closing of any street at a grade crossing of a railroad is disallowed by the city council, the council shall adopt a resolution appointing a board of appraisers consisting of three disinterested, competent freeholders of the city to examine such claims and to determine the amount of the damage, if any. Such resolution shall fix the time when said appraisers shall meet on the premises for the purpose of hearing evidence as to such damage. A copy of said resolution shall be served upon the owner or owners of said premises personally or by publication for five days in a newspaper published in the city. At the time fixed for said meeting, or at some subsequent time fixed by the appraisers therefor, said appraisers, after being duly sworn to act fairly and impartially, shall meet on the premises and shall hear any evidence offered by the city or by the owner as to the nature and extent of such damage. The appraisers shall, in determining the amount of damage, take into consideration any special benefits resulting from the construction of the overpass or underpass or the closing of the street, and the amount of such special benefit shall be deducted from the amount of damage. The amount of such damage and of such special benefit shall be reported by the appraisers to the city council, and such report of the appraisers, or a majority thereof, shall, to the extent of the excess of damages over special benefits, have

the effect of a judgment against the city of Greensboro. From such report either the city or the owner may, within ten days after the same is ordered spread upon the minutes of the city council, appeal to the Superior Court. The method provided in this section for the determination of real property damages resulting from the construction by the city of overpasses or underpasses, or from the closing of streets at grade crossings shall be exclusive; and no action shall be maintained by any property owner to recover damages therefor until the city shall have failed for six months after the filing by the owner of his notice of claim to appoint a board of appraisers to determine such damages as herein provided. This section shall not be deemed in any way to change the measure of damages now applicable or to confer a right to recover damages when none now exists. Any number of claims may be submitted by the city council to a single board of appraisers."

Subsequent to the closing by the city of Greensboro of South Spring Street, at its intersection with the tracks of the railroad companies, the plaintiffs, W. A. Hiatt and his wife, Mattie D. Hiatt, filed with the city council of the city of Greensboro, notice of their claim for damages to their property, resulting from the closing of said street. The claim was disallowed by the city council, on the ground that the city of Greensboro was not liable to plaintiffs for damages, if any, resulting from the closing of South Spring Street. Pursuant to the provision in the chapter of the city of Greensboro, the city council appointed a board of appraisers to examine the claim of plaintiffs. On 7 January, 1930, the board of appraisers filed its report with the city council, in which said board fixed the amount of damages to be paid to plaintiffs by the city of Greensboro, on account of the closing of South Spring Street by said city, at $500.

From the award made by the board of appraisers, both the plaintiff and the defendant, city of Greensboro, appealed to the Superior Court of Guilford County.

At the trial in the Superior Court, both plaintiffs and the defendant, city of Greensboro, offered evidence in support of their respective contentions. The issues submitted to the jury were answered as follows:

"1. Are the plaintiffs the owners of the property described in paragraph 1 of the defendant's notice of appeal? Answer: Yes.

2. What amount, if any, are the plaintiffs entitled to recover of the defendant? Answer: $1,165."

From judgment that plaintiffs recover of the defendant the sum of $1,165, and the costs of the action, defendant appealed to the Supreme Court.

*Frazier & Frazier and O. L. Sapp for plaintiffs.*
*Andrew Joyner, Jr., and Robert Mosely for defendants.*

CONNOR, J. On its appeal to this Court, the defendant, city of Greensboro, contends that upon all the evidence introduced at the trial in the Superior Court, plaintiffs are not entitled to recover of the defendant the damages, if any, resulting to their property situate on the east side of South Spring Street, from the closing by defendant of said street at its intersection with the tracks of the North Carolina Railroad Company and its lessee, the Southern Railway Company, and that it was, therefore, error for the trial court (1) to refuse to allow its motion made at the close of all the evidence, for judgment as of nonsuit, and (2) to decline to instruct the jury, as requested by the defendant, in writing and in apt time, that upon all the evidence the jury should answer the second issue, "Nothing." The defendant, by its assignments of error in this Court, presents for decision the single question involved in these contentions.

The question of law to be decided may be stated as follows:

Where a municipal corporation, by statute charged with the duty and vested with the power to establish, construct and maintain streets within its corporate limits, over which the public may travel in reasonable safety and with reasonable convenience, pursuant to its contract or agreement with a railroad company, which has agreed to pay part of the cost and expense incurred by such corporation in carrying out a comprehensive program for the elimination of grade crossings within its corporate limits, caused by the intersection of its tracks by certain streets established, constructed and maintained by such corporation, and under express statutory authority, has closed one of its streets and has thus deprived the owner of a lot abutting on such closed street of the use of said street as a means of egress from and of ingress to said lot, which he had theretofore enjoyed, is such corporation liable to the owner of the lot for damages resulting from the closing of the street?

This question does not seem to have been heretofore presented to this Court for decision. Counsel for defendant cite *Crowell v. Monroe,* 152 N. C., 399, 67 S. E., 989, and rely upon the decision in that case as an authority in support of defendant's contention in this case. In the cited case it was held that the plaintiff was not entitled to recover of the defendant on her claim for damages resulting from the closing of a street by the defendant. It is said, however, in the opinion for the Court: "The record does not present the question of taking private property for public use, nor the question of the permanent closing of a public street in which the abutting owner has certain recognized rights. *Moose v. Carson,* 104 N. C., 431, 10 S. E., 689. The facts

disclose nothing more than a closing of a railway crossing in order that an overhead bridge immediately above the crossing may be erected for the use of the public, and evidently for public safety and convenience. It may be that plaintiff is inconvenienced and temporarily damaged, but it is *damnum absque injuria.*" In the instant case, the plaintiffs are the owners of a lot abutting on the closed street. As the result of the closing of the street, the lot is now on a *cul de sac,* whereas prior to the closing it was on a public street which afforded access to said lot from two directions. The closing of the street deprives plaintiffs of the use of the street as a means of access to their lot from one direction, and stops all travel along the street from the other direction. The decision in the cited case is not controlling in the instant case, and is not an authority in support of defendant's contention that upon all the evidence plaintiffs are not entitled to recover of the defendant the damages which have resulted to their property from the closing of the street by the defendant.

The law in this and in other jurisdictions recognizes a distinction between the rights of an owner of a lot abutting on a public street, and the rights of the public in and to such street. Ordinarily, the public has the right only to pass and repass over and along the street so long as it is maintained by public authority for that purpose. In addition to this right, which he has as a member of the public, the owner of the abutting lot has the right to have the street kept open as a means of egress from and of ingress to his property. He has an easement in the street, which is appurtenant to his lot. This easement is his private property of which he cannot be deprived even for the use of the public, without just compensation. It is said: "An abutting owner has two distinct kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the highway, and which are not common to the public generally; and this regardless of whether the fee of the highway is in him or not. These rights are property of which he may not be deprived without his consent, except upon full compensation and by due process of law. They include the easement of access, and of light and air, the right of lateral support, and the right to have the highway kept open as a thoroughfare to the whole community for the purpose of travel. . . . An abutting landowner on a public highway has a special right of easement and user in the public road for access purposes and this is a property right which cannot be damaged or taken from him without due compensation." 29 C. J., p. 547. See *Colvin v. Power Co.,* 199 N. C., 353, 154 S. E., 678.

In the instant case, plaintiffs, the owner of a lot abutting on South Spring Street, by the closing of said street have been deprived of their

easement of access to their property over and along said street, with the result that the value of their property for residential and other purposes has depreciated. In 13 R. C. L., at page 71, it is said: "It has been held that the vacation of a highway or street is not an injury to the abutting owners within the provisions of the Constitution requiring compensation, and in the absence of legislative provisions for damages, none can be recovered. But the general rule is that persons specially injured by the vacation are entitled to recover such damages as they may sustain even in the absence of a statute providing therefor." See note in 49 A. L. R., at page 351, where it is said: "The weight of authority supports the proposition that if, by the vacation or closing of the street, access to property from the general system of streets in that direction is obstructed, and the property is left fronting on a *cul de sac,* the owner may recover damages." This statement is supported by numerous decisions of courts in many jurisdictions, which are cited by the author of the note.

We are of opinion, after careful consideration, that the question of law presented by this appeal should be answered in the affirmative. The plaintiffs in the instant case have suffered special damages in the depreciation of the value of their property resulting from the deprivation of their right of access to their property from the northern section of the city and from the stopping of all travel by their property from the southern section of the city. They have been deprived of rights which differ in kind and degree from the rights of the public. They are entitled to recover the damages assessed by the jury and the judgment is affirmed.

No error.

BROGDEN, J., dissents.