IDA GEORGIA TURPIN SNOW v. NORTH CAROLINA STATE HIGHWAY COMMISSION.

(Filed 12 June 1964.)

**1. Eminent Domain § 2—**

To entitle a land owner to damages for the closing of a portion of a highway he must show injury different in kind, and not merely in degree, from that suffered by the general public, which requires a showing of a taking of property or a property right or physical damage to property or an interference with a property right.

**2. Highways § 5—**

The right of the owner of land to access to a highway is an easement appurtenant constituting a property right beyond his right as a member of the general public, but such right of access obtains only to lands which abut the highway.

**3. Highways § 6—**

The Highway Commission has authority in the exercise of delegated police power to eliminate grade crossings and intersections. G.S. 136-89.48, G.S. 136-89.53.

**4. Highways § 11—**

The fact that a section of an old highway is kept open and thus constitutes a neighborhood public road, G.S. 136-67, does not preclude the Highway Commission from barricading it at its intersection with a new highway upon constituting the new highway a nonaccess highway.

**5. Eminent Domain § 2—**

Impairment of the value of property resulting from the exercise of the police power does not entitle the property owner to compensation when no property or property right is taken.

**6. Same—**

Plaintiff's property abutted an old highway kept open after the construction of a new highway, but plaintiff's property did not abut the new highway. Upon the improvement of the new highway into a nonaccess highway the old highway was barricaded at the intersection, leaving plaintiff's property in a cul-de-sac, so that plaintiff's route to the new highway and to a municipality was made more circuitous and inconvenient. *Held:* Plaintiff's inconvenience was different in degree but not in kind to that suffered by the public generally and there was no "taking" of any property right so as to entitle plaintiff to compensation.

APPEAL by plaintiff from *Gwyn, J.,* September 3, 1963, Civil Session of SURRY.

This is an action to recover damages for the alleged taking of property for highway purposes.

Plaintiff's land, on which her home is located, abuts old Highway 52 for a distance of 105 feet. Old Highway 52 runs generally north and

south. Plaintiff's land is situate on the west side of said highway approximately three-fourths of a mile north of the corporate limits of the town of Pilot Mountain. Highway 52 was relocated about 1953, and the highway at the new location was designated as U. S. Highway 52 and is about 100 yards or more east of plaintiff's property at the nearest point. Old Highway 52 was not discontinued; it intersected U. S. Highway 52 at a point approximately 1200 feet southeast of plaintiff's property; the intersection was "on-grade" and there were stop signs at the intersection controlling traffic on old Highway 52. Both old Highway 52 and U. S. Highway 52 had two lanes, one for northbound, and one for southbound, traffic. In 1960 defendant Highway Commission approved and began construction of a project (No. 8.17542-Surry County) for the widening and relocation of U. S. Highway 52, making it a limited-access dual lane highway, and separating the lanes for northbound and southbound traffic by a "grassed-in" median area. Access was limited to interchange ramps at grade separations. In connection with this project 750 feet of old Highway 52 was discontinued. At a point 450 feet south of plaintiff's southern property line old Highway 52 was "dead-ended" and barricaded. A circular turn-around was constructed and the barricade was erected immediately south of the "turn-around." The "on-grade" intersection of old Highway 52 and U. S. Highway 52 was eliminated. Plaintiff's property was thus left on a cul-de-sac. The barricading of old Highway 22 south of plaintiff's property does not interfere in any way with travel northwardly from her property on that highway, but it increases by about one mile the distance one must travel to reach Pilot Mountain and other points south thereof on the old and new highways. In order to reach Pilot Mountain by vehicular travel from plaintiff's property, it is necessary to travel northwardly 2100 feet on old Highway 52 to the Cook's School Road, go eastwardly on Cook's School Road a short distance, enter U. S. Highway 52 by way of the interchange ramp to the southbound traffic lane, and then proceed southwardly. In constructing the project defendant did not take or in any way interfere with "the ground or the physical property of the plaintiff." The land on which the project is located does not touch plaintiff's property at any point, but is several hundred feet therefrom. Plaintiff still has unlimited access to old Highway 52 at all points along her 105-foot frontage.

Plaintiff contends that the barricading of old Highway 52 at a point 450 feet south of her property, leaving it on a dead-end road, and the circuitous route required for travel to Pilot Mountain and other points on the highways south of her property, constitute a taking of and in-

terference with her property rights and right of access. Defendant contends that no property rights have been taken in the legal sense.

The judge, acting pursuant to G.S. 136-108, tried the issues (other than the issue of damages) without the intervention of a jury, found the facts (in substance as above set out), and concluded that the construction of the project and the barricading of old Highway 52 do *"not constitute a taking or interference with any property or property rights, or special rights of the plaintiff"* and "there is no issue of damages to submit to a jury." Judgment was entered dismissing the action. Plaintiff appeals.

*Attorney General Bruton, Assistant Attorney General Lewis, Trial Attorney McDaniel, and Thomas M. Faw for defendant Highway Commission.*

*Blalock & Swanson and C. Orville Light for plaintiff.*

MOORE, J. Plaintiff does not except to the judge's findings of fact. The sole question for decision is whether, under the facts found, there was a taking of or interference with any property or property rights of plaintiff for which she is entitled to recover compensation.

Plaintiff contends that, by constructing the project so as to leave her property on a cul-de-sac, defendant has taken from her a property right in the nature of an easement appurtenant. She relies principally upon the holding of this Court in *Hiatt v. Greensboro*, 201 N.C. 515, 160 S.E. 748 (1931). The city of Greensboro, to eliminate a dangerous crossing, closed a street at its intersection with a railroad. Plaintiffs' lot, on which their home was located, fronted on this street. There was no intersecting street between their lot and the barricade at the railroad right of way, and the closing of the street deprived plaintiffs of the street as a means of access to their lot from one direction and stopped travel from the other direction. It was held that this constituted a taking of property, the opinion stating: ". . . the owner of the abutting lot has the right to have the street kept open as a means of egress from and of ingress to his property. He has an easement in the street, which is appurtenant to his lot. This easement is his private property of which he cannot be deprived even for the use of the public, without just compensation. . . . 'An abutting owner has two distinct kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the highway, and which are not common to the public generally; and this regardless of whether the fee of the highway is in him or not. These rights are property of which he

may not be deprived without his consent, except upon full compensation and by due process of law. They include the easement of access . . . and the right to have the highway left open as a thoroughfare to the whole community for the purpose of travel. . . .' 29 C.J., p. 547. See *Colvin v. Power Co.*, 199 N.C. 353, 154 S.E. 678."

It is said that "The weight of authority supports the proposition that if, by the vacation or closing of a street, access to property from the general system of streets in that direction (is cut off), and the property is left fronting on a cul-de-sac, the owner may recover damages." 49 A.L.R. 351 (1927); 93 A.L.R. 642 (1934). Thus, *Hiatt* was in accord with the majority opinion. However, "The rule appears to be well settled that ordinarily damages cannot be recovered by a property owner for the vacation or closing of a street in another block from that in which his property is located, or, in other words, beyond the next cross street, since his right, if any, to have the street remain open, extends only to the next cross street, and under these circumstances he may be regarded as having access to his property, and as sustaining no special or peculiar damages," 49 A.L.R. 361; 93 A.L.R. 644. In *Sanders v. Smithfield*, 221 N.C. 166, 19 S.E. 2d 630 (1942), the obstruction was beyond the next cross street, and the holding was in accord with the latter rule — also the majority view. The opinion comments: "It seems clear that the owner is not entitled to freeze the map, or demand compensation for municipal changes in the street, however remotely they occur."

The rule that an abutting owner has a right of access to the general system of streets and to the remainder of his street with all of its connections to a point where they cease to be of more than remote advantage to him, and that when one end of the street is closed he is entitled to compensation, is sometimes referred to as the "cul-de-sac principle." *Tift County v. Smith*, 131 S.E. 2d 527 (Ga. 1963). It seems that this principle has been generally limited in application to streets of a city or town. See cases listed and discussed in 49 A.L.R. 351-365, 93 A.L.R. 642-645, and Supplemental Decisions. Text writers in discussing the principle usually refer to "streets" rather than "highways." 18 Am. Jur., Eminent Domain, § 225, pp. 858-9; Nichols on Eminent Domain (3d Ed.), Vol. 2, § 6.32(2), pp. 421-425.

The cul-de-sac principle may, under some circumstances, find support or analogy in the rule, recognized in this and most jurisdictions, that "where lots are sold and conveyed by reference to a map or plat which represents a division of a tract of land into subdivisions of streets and lots . . . the purchaser of a lot or lots acquires the right to have all and each of the streets kept open . . ." *Steadman v. Pine-*

*tops,* 251 N.C. 509, 515, 112 S.E. 2d 102; *Blowing Rock v. Gregorie,* 243 N.C. 364, 90 S.E. 2d 898. But the rights of abutting owners with respect to highways were at common law based upon a different theory, which is explained by Nichols (§ 6.32, pp. 419, 420) as follows: "In the case of a highway, the abutting owner generally owns the fee of the land within the limits of the way subject to an easement in favor of the public. His is the servient estate; and it is well settled at common law that the owner of the dominant estate may abandon an easement if he sees fit without any act of consent or concurrence on the part of the servient tenant. Although, as a matter of fact, the abandonment may injure the land upon or near which the easement was exercised, it could not constitute an actionable injury at common law, and certainly does not amount to a taking within the meaning of the constitution."

To entitle a landowner to damages in the closing of a portion of a highway, he must show that he has suffered an injury different in kind from that suffered by the general public. *Sanders v. Smithfield, supra; In re Hull,* 204 N.W. 534 (Minn. 1925). That is, he must show that land has been taken or physically damaged, or that some easement or right appurtenant to the land has been taken or interfered with.

In North Carolina it is recognized that the owner of land abutting a highway has a right beyond that which is enjoyed by the general public, a special right of easement in the highway for access purposes. This right of access is an easement appurtenant which cannot be damaged or taken from him without compensation. *Abdalla v. Highway Commission,* 261 N.C. 114, 134 S.E. 2d 81; *Hedrick v. Graham,* 245 N.C. 249, 96 S.E. 2d 129. This easement consists of the right of access to the particular highway upon which the land abuts. In the instant case no land was taken or physically damaged, and plaintiff's access to old Highway 52, the highway upon which her land abuts, has not been limited, impaired or interfered with in any way.

"An individual proprietor has no right to insist that the entire volume of traffic that would naturally flow over a highway of which he owns the fee pass undiverted and unobstructed. In fact, while under some circumstances and conditions he has a right of access to and from his own premises, he has no constitutional right to have anyone pass by his premises at all. Nichols on Eminent Domain, Third Edition, Volume 2, § 6.445." *Barnes v. Highway Commission,* 257 N.C. 507, 126 S.E. 2d 732. Highways are built and maintained for public necessity, convenience and safety in travel and not for the enhancement of the property of occasional landowners along the route. *Nelson v. State Highway Board,* 1 A. 2d 689, 118 A.L.R. 915 (Vt. 1938). An abutting

property owner is not entitled to compensation because of circuity of travel, so long as he has access to the highway which abuts his property. *Moses v. Highway Commission*, 261 N.C. 316, 134 S.E. 2d 664; *Barnes v. Highway Commission, supra; Mosteller v. R. R.*, 220 N.C. 275, 17 S.E. 2d 133. "It is understood that absolute equality of convenience cannot be achieved, and those who take up their residence or purchase and occupy property in proximity to public roads or streets do so with notice that they may be changed as demanded by the public interest. To justify recovery in such case, the damages must be direct, substantial and proximate, and not such as are attributable to mere inconvenience — such as being compelled to use a longer and more circuitous route in reaching the premises . . . An inconvenience of that nature is held to be no different in kind, but merely in degree, from that sustained by the general public, and is *damnum absque injuria.*" *Sanders v. Smithfield, supra.*

The flow of traffic by plaintiff's property has diminished. If she could collect for such diminution in travel by her property, "so could every merchant in a town when the Highway Commission constructed a by-pass to expedite the flow of traffic." *Moses v. Highway Commission, supra.* Plaintiff's travel to and from the town of Pilot Mountain and points farther south is more circuitous and inconvenient (though according to the judge's findings of fact it is safer). But, as we have seen, damages arising from mere circuity of travel are not compensable. Nevertheless, plaintiff contends she has a right to travel and reach a public outlet *in both directions* from her property.

The General Assembly has found, determined and declared that controlled-access highways are necessary for the preservation of the public peace, health and safety, the promotion of the general welfare, the improvement and development of transportation facilities in the State, the elimination of hazards at grade intersections, and other related purposes. G.S. 136-89.48. The Highway Commission is authorized to regulate, abandon and close grade crossings and intersections. G.S. 136-18(11); G.S. 136-89.53. It also has authority to change, alter, add to or discontinue roads of the State Highway system. G.S. 136-47; G.S. 136-54. Persons owning lands on abandoned segments of roads may not be left without access to new improved roads when necessary deviations are made, and, as against an owner of land over which the old road passed, injunctive relief will be granted to an owner whose land abutted the old road to prevent its obstruction, though the obstruction closes the road in only one direction. *Davis v. Alexander*, 202 N.C. 130, 162 S.E. 372. "All those portions of the public road system of the State which . . . have been abandoned by the State Highway Commission,

but which *remain open and in general use as* a necessary means of in-gress to and egress from the dwelling house of one or more families . . . are . . . neighborhood public roads . . ." G.S. 136-67. Every seg-ment of a public road which has been abandoned as a part of the State road system coming within the terms of the statute (G.S. 136-67) is . . ., by legislative enactment, established as a neighborhood public road." *Woody v. Barnett,* 235 N.C. 73, 76, 68 S.E. 2d 810. However, the elimination by the Highway Commission of a section of a road so as to exclude a dangerous grade intersection, underpass or overpass, is not a segment of an abandoned road "which remain(s) open and in general use by the public" so as to qualify it as a neighborhood road which must be kept open. *Mosteller v. Railroad, supra.*

No property, property right or special right of plaintiff has been taken, damaged or interfered with by the Highway Commission, in the legal or constitutional sense, and she is not entitled to compensation. When the Highway Commission acts in the interest of public safety, convenience and general welfare, in designating highways as controlled-access highways, its action is the exercise of the police power of the State. And the impairment of the value of property by the exercise of police power, where property itself is not taken, does not entitle the owner to compensation. *Barnes v. Highway Commission, supra; Nick v. State Highway Commission,* 109 N.W. 2d 71 (Wis. 1961).

A recent case decided by the Supreme Court of Georgia (*Tift Coun-ty v. Smith, supra*) is in point. There the plaintiffs sought damages because of a dead-end obstruction of the public road upon which their farm abutted. A controlled-access highway was constructed a short distance east of their farm; the old road was closed at the right of way of the controlled-access highway leaving plaintiffs' farm on a cul-de-sac; the travel distance from the farm to plaintiff's market town was increased more than two miles. None of their land was taken or phy-sically damaged; they had the same access to the old road they had before. Though the Georgia Court had recognized the cul-de-sac prin-ciple, it was held that there was no compensable taking or damage. The Court said:

> "It must be remembered that in this situation the rights of the plaintiffs fall into two categories: general rights, which they have in common with the public, and special rights, which they hold by virtue of their ownership of this property. In order to constitute a taking or damaging of their property, it is the special rights that must have been violated.

> "The only interference plaintiffs allege is inconvenience of travel on the old road. But this inconvenience they share general-

ly with other members of the public who use this road. . . . their damage is different from that of the general public in degree only, and not in kind. . . .

". . . their inconvenience does not constitute a taking or damaging of their property under the Constitution.

". . . In *Warren v. Iowa State Highway Commission,* 250 Iowa 473, 480, 93 N.W. 2d 60, the Supreme Court of Iowa said: 'It is evident that the closing of the road will put (the property owner) to a considerable amount of inconvenience, additional effort, and expense. On the other hand, it is apparent that if intersecting secondary roads . . . cannot be closed without payment to those who may suffer such inconvenience, who may be forced to travel by circuitous routes instead of the direct ways they formerly had, the expense to the general public will be tremendous. We are in the process of cooperating with the federal government in building several wide highways across the state, both north and south and east and west. They are a part of the National Interstate and Defense Highway system. They will inevitably cross many secondary roads and city and town streets, and numerous users of these latter ways will find themselves shut off, in part at least, from their accustomed convenient and direct means of going from place to place. Farmers, such as the plaintiff, will find they cannot reach their neighbors or shopping centers or, perhaps other tracts of their own lands, without much additional travel. . . . Of course, the heavy expense of compensating those who suffer some special damage is not a sufficient reason for not paying such damage. Their property may not be taken without fair compensation, if compensable damage they have . . .

" '. . . upon careful analysis of the cases the true rule appears with reasonable certainty. It is that one whose right of access from his property to an abutting highway is cut off or substantially interfered with by the vacation or closing of the road has a special property which entitles him to damages. But if his access is not so terminated or obstructed, if he has the same access to the highway as he did before the closing, his damage is not special, but is of the same kind, although it may be greater in degree, as that of the general public, and he has lost no property right for which he is entitled to compensation'."

To the same effect are: *Department of Highways v. Jackson,* 302 S.W. 2d 373 (Ky. 1957); *Holbrook v. State,* 355 S.W. 2d 235 (Tex. 1962); *Nick v. State Highway Commission, supra.*

*Hiatt v. Greensboro, supra,* is not controlling or applicable under the circumstances of the instant case. The Georgia and Kentucky courts, in the *Smith* and *Jackson* cases, declare that they no longer recognize a distinction between city streets and rural highways, and they repudiate the cul-de-sac principle *in toto. Quaere:* If the questions presented by *Hiatt* arise again in this jurisdiction, should this Court re-examine its holding in that case in the light of modern conditions and the trend of recent opinion in other States?

Affirmed.