A. J. ABDALLA AND WIFE, BETSY ABDALLA v. STATE HIGHWAY COMMISSION.

(Filed 17 January 1964.)

1. **Appeal and Error § 40—**

Where as a matter of law plaintiff is not entitled to recover on the record, judgment dismissing the action, even though entered on an erroneous ground, will not be disturbed.

2. **Eminent Domain § 2; Highways § 5—**

At common law the owner of land abutting a highway, while not entitled to access at all points along the boundary between his land and the highway, has a special right of easement for access purposes, and substantial interference with this free and convenient access to the highway is a "taking" of a property right for which he may recover just compensation.

3. **Same—**

The common law right of access of the owner of property abutting a highway does not apply when the owner has conveyed a right of way to

the Highway Commission, since in such instance the respective rights of the parties must be ascertained from the construction of the right of way agreement.

**4. Same; Easements § 7—**

Where the Highway Commission purchases the right of way from an abutting owner, with provision that the owner should have access to the highway, the Highway Commission is in effect the servient owner with respect to the right of access, and it has the right to locate the access road under the general rule that, where the grant does not fix the location of an easement, the owner of the servient estate has the right in the first instance to designate the location, subject to the limitation that it must exercise the right in a reasonable manner with due regard to the rights of the abutting owner.

**5. Same— Restricted access to service road and denial of access along interchange ramp held in conformity with right of way agreement.**

The right of way agreement in suit provided that the owners of abutting land should have "no right of access to the highway" except by way of service roads and ramps built in connection with the project. The project was an overpass of one highway over another with connecting ramps. The Commission provided plaintiffs access at the point where a service road was adjacent to plaintiffs' property, from which point plaintiffs had access to the highway by way of a ramp, but completely denied plaintiffs direct access to the ramp. *Held:* Plaintiffs were given reasonable access to the highways by way of the service road and ramp in conformity with the right of way agreement, and plaintiffs were not entitled to additional compensation on the ground that the denial of access to the ramp at all points contiguous to their property was an additional "taking."

APPEAL by plaintiffs from *Braswell, J.,* May 1963 Session of JOHNSTON.

Proceeding for compensation for the alleged taking by eminent domain of an easement of access to a public highway.

In 1956 defendant, State Highway Commission, in furtherance of a project to construct that portion of Interstate Highway 95 in the vicinity of its proposed intersection with U. S. Highway 70A near Selma, North Carolina, negotiated with the heirs at law of Tom Abdalla, including male plaintiff, for the purchase of an easement of right-of-way on and over a portion of a tract of land owned by them. As a result of the negotiations, the heirs at law of Tom Abdalla, and their spouses, on 23 October 1956 entered into a "Right of Way Agreement," in writing, with defendant, conveying the latter an easement of right-of-way on and over approximately 14 acres of land, for which defendant paid them $15,000. There remained to grantors adjoining the right-of-way 3.67 acres which they conveyed to plaintiffs herein.

The "Right of Way Agreement" provides that grantors "and their heirs and assigns shall have no right of access to the highway constructed on said right-of-way except by way of service roads and ramps built in connection with this project in the vicinity of survey station O+OO" (the intersection of Interstate 95 and Highway 70 A).

The highway project in question, a link of Interstate 95, was completed 17 December 1959. Interstate 95 overpasses Highway 70A and access from one to the other is by interchange ramps.

According to a map introduced in evidence by plaintiffs, the 3.67 acre tract is on the north side of the right-of-way of Interstate 95 and is about 400 to 500 feet northeast of Highway 70A. It extends northwardly from the right-of-way of Interstate 95 an average width of about 200 feet. The boundary line between the right-of-way of Interstate 95 and plaintiffs' 3.67 acre tract is 718.7 feet long. This boundary is irregular and for convenience we describe it as consisting of two arcs, the eastern end (Arc E) is 170.5 feet long, the western end (Arc W) is 548.2 feet long. Defendant has established along Interstate 95 a "control of access line" which coincides with Arc W, but runs to the south of Arc E and inside the right-of-way of Interstate 95, crosses a service road and continues eastwardly, leaving the eastern extension of the service road outside the "control of access line." The service road, proceeding westwardly a short distance from its intersection with the "control of access line" is south of and within said line and connects with an interchange ramp. The ramp runs generally parallel to plaintiffs' south boundary, but is at all points south of the "control of access line" and within the "no access" area established by defendant.

Defendant restricts plaintiffs' access as follows: Plaintiffs may enter upon that part of the right-of-way on Interstate 95 which is adjacent to Arc E and which lies north of the "control of access line," and in said portion of the right-of-way enter the service road, and from there proceed along the service road and ramp to the main highways; but they shall have no access to the service road or ramp, for direct entrance purposes, at any point south of the "control of access line." Defendant contends that this disposition of the matter is consistent with the provisions of the "Right of Way Agreement."

On the other hand, plaintiffs contend that the "Right of Way Agreement" gives them direct access, for entrance purposes, to the ramp and service road at all points along the ramp and service road opposite their southern boundary (Arc E and Arc W). They so contended in conversations with officials of the Highway Commission, but were advised by a letter, dated 9 February 1961, written to their attorney by defendant's Area Right-of-Way Agent, that defendant insists on the access control it established.

It is plaintiffs' position that the letter of 9 February 1961 amounts to a taking by defendant for public use of plaintiffs' rights of direct access to the ramp and service road. Plaintiffs instituted this proceeding on 24 July 1961 and filed petition setting out the transactions between the parties and asking for compensatory damages for the alleged taking. Defendant, answering, denied liability, alleged that it was in compliance with the contract, and pleaded the six months and twelve months statutes of limitation, G.S. 136-19 (as in effect on 17 December 1959). Commissioners were appointed by the clerk of superior court and they assessed $16,000 damages. Defendant filed exceptions. The clerk affirmed the report of the commissioners and defendant excepted and appealed to superior court.

The cause came on for trial in superior court. At first the judge announced that only the issue involving the plea in bar would be tried. During the course of the trial, the judge, deciding that a construction of the "Right of Way Agreement" was necessary preliminary to a determination of the plea in bar, ruled in favor of plaintiffs' contention and interpretation of the "Right of Way Agreement." At the close of plaintiffs' evidence the court allowed defendant's motion for nonsuit on the ground that the plaintiffs' evidence was insufficient to make a *prima facie* showing, by any inferences to be drawn therefrom, that the action had been instituted within one year of the completion of the project.

Plaintiffs appeal.

*Levinson & Levinson and Knox V. Jenkins, Jr., for plaintiffs.*

*Attorney General Bruton, Assistant Attorney General Harrison Lewis, Trial Attorney Edwin S. Preston, Jr., Norman C. Shepard and Robert A. Spence for defendant.*

MOORE, J.   Plaintiffs assign as error the action of the court in entering the judgment of nonsuit.

The action was nonsuited on the theory that it is barred by the statute of limitations. Conceding for the purpose of this appeal, but not deciding, that the court erred in its ruling on the plea in bar, we nevertheless hold that the judgment must be affirmed for it clearly appears from the record that the defendant is entitled to a dismissal of the action as a matter of law. The rights of the parties are fixed and controlled by the "Right of Way Agreement" and defendant has accorded to plaintiffs all the rights to which they are entitled thereunder. It is not after the manner of appellate courts to upset judgments when the action of the trial court, even if partly erroneous, could by no possi-

bility injure the appellant. *Justice v. Mitchell*, 238 N.C. 364, 78 S.E. 2d 122; *Wells v. Clayton*, 236 N.C. 102, 72 S.E. 2d 16; *Munday v. Bank*, 211 N.C. 276, 189 S.E. 779; *Bank v. McCullers*, 201 N.C. 440, 160 S.E. 494.

It is generally recognized that the owner of land abutting a highway has a right beyond that which is enjoyed by the general public, a special right of easement in the public road for access purposes, and this is a property right which cannot be damaged or taken from him without due compensation. *Hedrick v. Graham*, 245 N.C. 249, 96 S.E. 2d 129; *Williams v. Highway Commission*, 252 N.C. 772, 114 S.E. 2d 782; *Sanders v. Smithfield*, 221 N.C. 166, 19 S.E. 2d 630; *Hiatt v. Greensboro*, 201 N.C. 515, 160 S.E. 748; *State v. Department of Highways*, 8 S. 2d 71 (La. 1942); *Breinig v. County of Alleghany*, 2 A. 2d 842 (Penn. 1938); *Genazzi v. Marin County*, 263 P. 825 (Cal. 1928). But a landowner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway, although entire access cannot be cut off. It he has free and convenient access to his property, and his means of ingress and egress are not substantially interferred with by the public, he has no cause of complaint. *Genazzi v. Marin County*, *supra*; *Warren v. Iowa State Highway Commission*, 93 N.W. 2d 60 (Iowa 1958); *King v. Stark County*, 266 N.W. 654 (N.D. 1936); *State Highway Board v. Baxter*, 144 S.E. 796 (Ga. 1928); *Gilsey Buildings, Inc. v. Incorporated Village*, 11 N.Y.S. 694 (1939).

In *Barnes v. Highway Commission*, 257 N.C. 507, 126 S.E. 2d 732, plaintiff owned land abutting the highway. On his land were three business establishments—a service station, a bulk oil plant and a frozen custard place. The Highway Commission constructed curbing along the edge of the highway at certain points in front of these establishments and left spaces for ingress and egress. The opinion, delivered by *Bobbitt, J.*, states the following principle of law (at p. 517): " 'While entire access may not be cut off, an owner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway; if he has free and convenient access to his property and to the improvements thereon, and his means of ingress and egress are not substantially interfered with by the public, he has no cause of complaint.' 39 C.J.S., Highways, § 141; . . ." The opinion concludes that plaintiff "is entitled to recover compensation on account of injury to . . . his . . . property to the extent, *if any*, such curbing substantially impairs free and convenient access thereto and the improvements thereon." (Emphasis added).

The principles stated in the two preceding paragraphs relate to a landowner's common-law right of access. In the instant case plaintiffs

do not, and cannot, rely on the common-law right of access; such rights as they have are embodied in and limited by the "Right of Way Agreement." The agreement provides that plaintiffs "shall have *no right of access* to the highway constructed on said right-of-way *except* . . . ." Thus, the parties knew at the time of making the contract that the highway to be constructed was one of limited and restricted access and they were contracting with respect to the question of access. Yet plaintiffs contend they reserved under the contract the right of direct access to all points along the service road and ramp opposite their property, which is a greater right than they would have had at common law had the contract been silent as to access. Under the terms of the contract plaintiffs first gave up all right of access and then by way of exception reserved a specific right of access to the highway "by way of service roads and ramps." Defendant has made available to plaintiffs exactly what the contract calls for, access from plaintiffs' land to the highway *by way* of service roads and ramps.

Easements of right-of-way acquired by the Highway Commission for public highways are, under existing law, so extensive in nature and the control exercised by the Commission so exclusive that the servient estate in the land, for all practical purposes, amounts to little more than a right of reverter in the event the State's easement is abandoned. It is for this reason that an abutting landowner's right of access to a public highway is generally defined as an easement, even though he may own the fee in the land over which the highway runs. Hence, a right of access to a public highway is an easement appurtenant to land. *Williams v. Highway Commission, supra; Hedrick v. Graham, supra.* The Highway Commission is in effect the servient owner and has the right to locate the access route under the general rule that where an easement is granted or reserved in general terms which do not fix its location, the owner of the servient estate has the right in the first instance to designate the location of such easement, subject to the limitation that he exercise such right in a reasonable manner and with due regard to the rights of the owner of the easement. *Andrews v. Lovejoy,* 247 N.C. 554, 101 S.E. 2d 395; *Cooke v. Electric Membership Corp.,* 245 N.C. 453, 96 S.E. 2d 351. Indeed, the Highway Commission, as trustee for the public, has greater right of control than a private servient owner.

Plaintiffs do not complain that they have been denied access; they complain that they are not permitted to designate and locate the route of access. It is their position that the word "highway," as used in the "Right of Way Agreement," refers to the main highway and not to service roads and ramps, that their access to the main highway *is* re-

stricted and limited to access "by way of service roads and ramps," but, as to the service road and ramp on the right-of-way near and parallel to their boundary, direct access thereto is not limited by contract or otherwise. However, according to the map introduced by plaintiffs and the information and explanation thereon and attached thereto, the Highway Commission has made available to plaintiffs direct access to all of the service road opposite their boundary except a very short segment at the junction of the service road and ramp. The ramp has a specific purpose and function. It is not established for the accommodation of abutting landowners; it is for the interchange of traffic between two heavily travelled highways (one overpassing the other). It is indeed the junction or joinder of the two highways. For all practical purposes it is a part of the main highway within the meaning of the word "highway" as set out in the "Right of Way Agreement." Under the circumstances clearly disclosed by plaintiffs' evidence, we hold as a matter of law that plaintiffs' access to the service road is free and convenient and defendant has not substantially interfered therewith, and under the contract between the parties plaintiffs are not entitled to direct access to the ramp.

Affirmed.