## B. G. FRENCH v. STATE HIGHWAY COMMISSION.

(Filed 28 February, 1968.)

**Eminent Domain §§ 2, 5—**

Where an agreement between the owner and the State Highway Commission for the taking of land for a limited access highway provides that the owner should have no right of access to the highway except at designated survey stations, the right of access in accordance with the agreement is a property right, and the denial by the Commission of access at these stations constitutes a "taking" for which the owner is entitled to compensation.

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Hobgood, J.*, at the May 1967 Mixed Session of ROBESON, docketed and argued as No. 853 at Fall Term 1967.

The plaintiff sues for compensation for the alleged taking of his property by the defendant in the process of converting U. S. Highway No. 301 into a controlled-access highway now known as Interstate Highway No. 95. The property which he claims was so taken was his alleged access easement from and to his land lying on both sides of the highway to, from and across the through traffic lanes of the highway at two points known as Stations 348+00 and 378+00. The defendant denies that it has taken the plaintiff's right of access, for the reason that at such points he has access from and to his land to and from service roads which are part of the highway, one lying on each side thereof, and which provide him with access to and from the through traffic lanes of the highway by proceeding along one of such service roads to its point of interchange with the through traffic lanes.

Pursuant to G.S. 136-108, a hearing was had in the superior court, without a jury, to determine issues raised by the pleadings other than the issue of damages. The specific issue so before the court was

whether the elimination by the defendant of crossovers previously established at Stations 348+00 and 378+00 constituted a taking of a property right of the plaintiff for which he is entitled to compensation. The superior court adjudged that it did constitute such taking and ordered the appointment of commissioners to appraise the damage sustained by the plaintiff as a result of such taking.

The material facts found by the court from admissions in the pleadings, stipulations, oral testimony and exhibits are as follows:

1. The plaintiff is the owner of a large tract of land through which Interstate Highway 95, formerly U. S. Highway 301, runs.

2. In 1954 the plaintiff and his wife executed a Right of Way Agreement which was accepted by the defendant. They thereby granted to the defendant a right of way through the farm of the plaintiff for the construction of the defendant's Project 3971, this being the construction of a portion of U. S. Highway 301 bypassing the city of Lumberton. The agreement recited that the plaintiff and his wife, "recognizing the benefits to their property by reason of the construction of the proposed highway development in accordance with the survey and plans proposed for same, and in consideration of the construction of said project," granted to the defendant the right of way therefor. It then provided:

> "It is further understood and agreed that the undersigned, their heirs and assigns, shall have no access to the proposed highway to be constructed on said right-of-way except as follows: 348+00, 378+00 and 406+34."

3. Pursuant to the plans therefor, the defendant thereupon constructed on the right of way so granted its Project 3971, including divided lanes for northbound and southbound through traffic, a service road on each side of and parallel to the through traffic lanes and, at Stations 348+00 and 378+00, crossovers running from one service road to the other whereby, at these points, direct access was given, across the through traffic lanes and service roads, from the land of the plaintiff on one side of the highway to the land of the plaintiff on the other side of it.

4. In 1963 the defendant began and in 1965 it completed the construction of its Project 8.13978 upon the same right of way through the farm of the plaintiff, this project being the conversion of U. S. Highway 301 to Interstate Highway 95. In the course of this construction, the defendant physically removed the crossovers at Stations 348+00 and 378+00 and constructed a woven wire fence between the through traffic lanes of the highway and the service roads,

so that thereafter the plaintiff could no longer go directly across the highway at these points from his land on one side of the highway to his land on the other side of it but, in order to reach the through traffic lanes, was compelled to proceed along one of the service roads to its interchange point with the through lanes.

5. Following the completion of the construction of Project 3971, including the above mentioned crossovers, and prior to the commencement of the construction of Project 8.13978, resulting in the removal of those crossovers, the plaintiff constructed upon his property near Station 378+00 two service stations.

6. After the completion of the construction of Project 3971, including the crossovers, and prior to the elimination of those crossovers, the plaintiff and his grantees were afforded by the defendant free access to the service roads running parallel to the through traffic lanes, and numerous driveways were connected with such service roads affording access to and from the property of the plaintiff and his grantees from and to such service roads.

7. By the above quoted language of the Right of Way Agreement executed by the plaintiff and his wife to the defendant, it was the intention of the parties thereto that on both sides of the highway at Stations 348+00 and 378+00 there would be crossovers and direct at grade access to the through traffic lanes of the highway.

8. The defendant has not compensated the plaintiff for the elimination of such access to the through travel lanes of the highway at these points.

*Attorney General Bruton, Deputy Attorney General Lewis, Assistant Attorney General McDaniel and John Wishart Campbell, Associate Counsel, for defendant appellant.*

*Dickson McLean, William T. Joyner and W. T. Joyner, Jr., for plaintiff appellee.*

LAKE, J. The provisions of the Right of Way Agreement executed by the plaintiff and his wife to the defendant, which are quoted in the foregoing statement of facts, are exactly the same as the corresponding provisions in the agreement which was before us in *Petroleum Marketers v. Highway Commission,* 269 N.C. 411, 152 S.E. 2d 508. There, we said:

"In determining whether the plaintiff had a property right which has been taken or destroyed by the resolution of the

Highway Commission, we are not controlled by the provision in G.S. 136-89.52 [enacted after the execution of the agreements both in that case and in the present case] * * *. It is also not necessary for us to determine upon this appeal what would have been the rights of the parties without such agreement. The agreement was made and the rights of the parties are fixed thereby * * *"

Here, as in that case, the Right of Way Agreement refers to the then proposed highway construction in accordance with "the survey and plans proposed for the same." The Right of Way Agreement was executed by the plaintiff "in consideration of the construction of said project." Those plans for the project showed service roads on each side of the through traffic lanes of the highway and also showed crossovers at the two points here in question, each of which crossovers ran from one service road to the other directly across the through traffic lanes at grade level. The highway was so constructed by the defendant and so used by the public, including the plaintiff, for a number of years.

It would be, indeed, a strained construction of the Right of Way Agreement to say that the parties by stipulating for a right of access "to the proposed highway to be constructed" at the two points in question meant only a right of access to service roads and did not contemplate the construction of and continuance of the crossovers shown upon the plans then in existence and to which the agreement referred. Had the Right of Way Agreement contained no reference whatever to the plaintiff's access to the highway at the points in question, he, along with the rest of the world, would now have the right to travel along the service roads from these points to their points of interchange with the through travel lanes of the highway. The following observations in *Petroleum Marketers v. Highway Commission, supra,* are equally applicable to the present case:

"Since all the world has this right, such a construction of the agreement between this landowner and the Commission would be most unreasonable. Such construction would give to the landowner no greater right of access than he would have had if there had been omitted entirely from the agreement the words 'except at the following survey stations: 350+00.' [In the present case, 348+00 and 378+00.] These words in the agreement meant something. It was intended thereby to leave in or confer upon the landowner a right of access which the general public did not have, and which the landowner would not have had if the excepted phrase had been omitted from the

agreement. It will be observed that the agreement in this case did not provide, as did the agreement in *Abdalla v. Highway Commission* [261 N.C. 114, 134 S.E. 2d 81], 'grantors * * * shall have no right of access to the highway constructed on said right of way except *by way of service roads and ramps* built in connection with this project in the vicinity of survey stations 0+00.' " (Emphasis supplied.)

In that case, we said the plain meaning of the agreement was that the landowner surrendered whatever claims she might otherwise have had to a direct access to the highway at other points in exchange for a cash consideration and a reservation or grant of a right of direct access to the highway at the designated point.

The defendant's exception to the finding by the superior court that it was the intent of the Right of Way Agreement that the plaintiff have direct access and the right of crossover to and from and across the through traffic lanes of the highway at the designated points is without merit. This is the clear meaning of that agreement.

By virtue of this agreement, so interpreted, the plaintiff had an easement, which is a property right and which the defendant took from him by the removal of the crossovers and the construction of the fences between the service roads and the through traffic lanes of the highway. *Petroleum Marketers v. Highway Commission, supra; Williams v. Highway Commission,* 252 N.C. 772, 114 S.E. 2d 782. While the defendant, in the exercise of its power to regulate the flow of traffic upon the highway so as to promote safety and the free flow of traffic thereon, could take this property right from the plaintiff and terminate it, the defendant could not do so without the payment of compensation to the plaintiff for his property so taken. *Petroleum Marketers v. Highway Commission, supra.*

Our decision in *Highway Commission v. Nuckles,* 271 N.C. 1, 155 S.E. 2d 772, upon which the defendant relies, has no application to this case. There, we held that the separation of north and southbound traffic lanes so that the property of an adjoining landowner had direct access to one lane only did not deprive such landowner of a property right for which he was entitled to compensation. In the *Nuckles* case, there was no agreement between the landowner and the commission giving him access to all portions of the highway at a specified point.

Likewise, our statement in *Petroleum Marketers v. Highway Commission, supra,* that a ramp is part of a highway does not support the defendant's contention in the present case that access to the service road is the access to the highway contemplated by the Right of Way Agreement executed by the plaintiff and his wife. In that

case, the agreement, as here, stated that the landowner was to have access to the highway at a specified point, and the plan then in existence, to which the agreement related, showed the ramp at that point. Those plans did not show a crossover crossing the ramp and it would have been unreasonable to construe the agreement as giving the landowner the right to cross over the ramp and thus go on to the through traffic lanes beyond the ramp. Here, on the contrary, the plans to which the Right of Way Agreement refer, specifically showed a crossover from one service road to the other at each point designated and subsequently the commission constructed those crossovers and maintained them in use for several years. It is clear that the parties did not contract with reference to access to the service road only. The service road is part of the highway, but access to it only was not what the parties clearly intended when they executed and accepted the Right of Way Agreement.

We have carefully considered each of the defendant's assignments of error and find no merit therein.

Affirmed.

HUSKINS, J., took no part in the consideration or decision of this case.