CHARLES DAVID McNEILL and Wife, MARGARET P. McNEILL v. NORTH CAROLINA STATE HIGHWAY COMMISSION

No. 6916SC188

(Filed 30 April 1969)

1. Eminent Domain § 2; Highways § 5— right-of-way agreement — right of access

A highway right-of-way agreement providing that the landowners, their heirs and assigns "shall have no access to the proposed highway to be constructed on said right of way except" at two designated survey stations *is held* to convey to the landowners definite property rights in the survey stations.

2. Eminent Domain § 2; Highways § 5— denial of access granted by right-of-way agreement

Where a right-of-way agreement between the Highway Commission and a landowner for the taking of land for a limited access highway provides that the landowner should have no right of access to the highway except at two designated survey stations which do not abut the landowner's property, the right of access in accordance with the agreement is a property right, and the permanent removal by the Commission of access at one of the survey stations constitutes a taking for which successors in title to the original landowner are entitled to compensation.

3. Eminent Domain § 2; Highways § 5— consideration for right of way — right of access

The Highway Commission can not only pay money as consideration for a right-of-way agreement, but can grant to the landowner a right of access at a particularly designated point.

Appeal from *Bailey, J.,* 14 October 1968 Civil Session, Robeson County Superior Court.

Charles David McNeill and wife, Margaret P. McNeill, (plaintiffs) instituted this civil action for compensation against the North Carolina State Highway Commission (Commission) for the taking and appropriation by Commission of certain alleged property rights of the plaintiffs.

In October 1953 Johnny L. McNeill and wife, Eula O'Neal Mc-Neill, (original grantors) owned a tract of land in Robeson County, North Carolina. In connection with State Highway Project No. 3971 (Project No. 3971), the new U. S. Highway 301 (U. S. 301) was located across a portion of this tract. As a result the Commission and original grantors entered into a right-of-way agreement under date of 29 October 1953. The agreement, which was reduced to writing and recorded on 27 April 1954 in Book 11-J, at page 236, in the Robeson County Public Registry, stated:

". . . [R]ecognizing the benefits to said property by reason of the construction of the proposed highway development in accordance with the survey and plans, proposed for same, and in consideration of the construction of said project, [original grantors] hereby [grant] to the [Commission] the right-of-way for said highway project as hereinafter described and releases the [Commission] from all claims for damages by reason of said right-of-way across the lands of [original grantors], and of the past and future use thereof by the [Commission], its successors and assigns. . . ."

The agreement then conveyed a right-of-way 260 feet in width and some 2280 feet in length "in accordance with plans for said project in the office of the [Commission] in Raleigh, N. C.; subject to the following provisions only: For the above described right-of-way and for any and all damage to the property due to the construction of the above project, Commission to pay [original grantors], $8000.00. It is further understood and agreed that [original grantors], their heirs and assigns, shall have no access to the proposed highway to be constructed on said right-of-way except as follows: 167 + 73.9 and 131 + 70."

These numbers, 167 + 73.9 and 131 + 70, were survey stations on U.S. 301. These survey stations did not abut the original grantors' land. Survey Station 167 + 73.9 was located at a point some 1273.9 feet north of the place where the northernmost line of the original grantors' land abutted U.S. 301 and at a point where North Carolina Highways 72 and 711 crossed over U.S. 301 by bridge. Ramps gave access to the main north and southbound lanes of· travel of U.S. 301 from this crossover. Survey Station 131 + 70 was located fifty feet south of the place where the southernmost line of the original grantors' land abutted U.S. 301. In accordance with the plans for Project No. 3971, an eighteen foot service road was constructed on each side of and parallel with U.S. 301. At Survey Station 131 + 70 there was a grade crossing between the two service

roads, at which point there was access to these north and south-bound lanes of travel.

From 1 July 1955, when Project No. 3971 was completed, until 28 May 1965, the original grantors, their successors in title and the general public used the access points at Survey Stations 167 + 73.9 and 131 + 70 for the purposes of crossing U.S. 301 and getting on and off its north and southbound lanes of travel. Access for abutting landowners was also available at all points lying to the west of the eighteen foot service road located on the western side of U.S. 301.

As the result of two deeds, the last one being in 1961, the plaintiffs acquired title to the southern portion of the original grantors' tract of land. This portion is located on the western side of U.S. 301.

In 1965 a new highway improvement project, State Highway Project No. 8.13978, was undertaken by the Commission, pursuant to which U.S. 301 was utilized as a portion of Interstate Highway No. 95 (Interstate). In connection with this project the interchange at Survey Station 167 + 73.9 was redesigned and reconstructed and the grade crossing at Survey Station 131 + 70 was permanently removed. The eighteen foot service road, which abutted the plaintiffs' property and which was located on the western side of Interstate, was left intact. As a result of these changes, there was no access from plaintiffs' property to the north and southbound lanes of travel at Survey Station 131 + 70. Access to these lanes of travel was obtained by proceeding from plaintiffs' property to the service road and then traveling south for an unspecified distance to the next interchange or by proceeding from plaintiffs' property to the service road and then traveling north to the new interchange at Survey Station 167 + 73.9.

The plaintiffs contended that as a 'result of the permanent removal of access to Interstate at Survey Station 131 + 70, they were deprived of a property right for which they were entitled to compensation. The Commission denied the taking of any interest in land belonging to the plaintiffs.

Judge Bailey heard the matter for the purpose of determining issues raised by the pleadings and not for the purpose of determining the issue of damages. He made findings of fact based on the evidence and conclusions of law based on the findings of fact. He concluded that the Commission had taken a property right from the plaintiffs by permanently removing access to Interstate at Survey Station 131 + 70 and that the plaintiffs were, therefore, entitled to

compensation. The Commission appealed from the judgment to this Court.

*Nye & Mitchell by Charles B. Nye for plaintiff appellees.*

*Attorney General Robert Morgan, Deputy Attorney General Harrison Lewis and Assistant Attorney General Andrew McDaniel for defendant appellant.*

CAMPBELL, J.

[1] The question presented for determination is whether the plaintiffs had a property right which was taken or destroyed when the Commission permanently removed access to Interstate at Survey Station 131 + 70.

The Commission's first contention is that no property rights were created in the original grantors in Survey Stations 167 + 73.9 and 131 + 70 because the Commission did not intend to create such rights. It is argued that the agreement did not contract away any right of access to this tract of land since access remained by way of the service road and that the references to the survey stations in the agreement were merely descriptive words to indicate a means by which access to the north and southbound lanes of travel would be available to the original grantors, their successors in title, other landowners whose property did not adjoin or abut these access points and the general public.

The right-of-way agreement specifically referred to the fact that the parties thereto recognized "the benefits to said property by reason of the construction of the proposed highway development in accordance with the survey and plans proposed for same." It specifically provided that the original grantors, their heirs and assigns, "shall have no access to the proposed highway to be constructed on said right-of-way except as follows: 167 + 73.9 and 131 + 70." These were not simply descriptive words, and they did not limit access to the service roads only. These words conveyed definite property rights in Survey Stations 167 + 73.9 and 131 + 70 and eliminated access at any other point.

The first contention is without merit.

[2] The Commission's second contention is that, even if it intended to create property rights in the original grantors in Survey Stations 167 + 73.9 and 131 + 70, it had no authority to grant such private property rights inside a public highway where neither access point adjoined or abutted the original grantors' tract of land.

Relying upon N.C. Const. art. 1, § 7, the Commission argued that its authority is limited and that it can only exercise power with respect to controlling an abutting landowner's access rights. The Commission stated that it has never interfered with the access rights of the original grantors or the plaintiffs because there has always been access to the service road and because "[t]he only property right in the highway which runs with the land is the abutters' rights of access for 'free and convenient access' to the nearest lane of travel which is the service road." The Commission further argued that since the plaintiffs were not parties to the right-of-way agreement, there is no privity of contract between the Commission and plaintiffs; the plaintiffs did not acquire any property rights running with the land in these access points; and the original grantors did not specifically attempt to assign any property rights which they might have acquired under this agreement.

Right-of-way agreements similar to the one between the Commission and original grantors have been construed by the Supreme Court. As is true in the instant case, the agreements were entered into prior to the enactment in 1957 of G.S. 136-89.52. Therefore, we are not concerned with what effect, if any, the statute would have.

[3]     In *Williams v. Highway Commission*, 252 N.C. 772, 114 S.E. 2d 782, the Supreme Court held:

> "The fact that [the landowners'] right of access arose out of an agreement and a deed does not prevent its being a property right. Indeed, [the Commission's] right-of-way was created by agreement, but it is nonetheless a property right.

> The [Commission] has authority by virtue of G.S. 136-19 to acquire rights-of-way by purchase. . . . This right of access was an easement, a property right, and as such was subject to condemnation [in the future]."

In connection with the purchase of a right-of-way, the Commission can not only pay money, but can grant a right of access at a particularly designated point.

In *Abdalla v. Highway Commission*, 261 N.C. 114, 134 S.E. 2d 81, the Supreme Court stated:

> "It is generally recognized that the owner of land abutting a highway has a right beyond that which is enjoyed by the general public, a special right of easement in the public road for access purposes, and this is a property right which cannot be damaged or taken from him without due compensation."

The case pointed out the extent of the common law rights of an abutting landowner to access to a highway and how such common law rights may be changed by agreement. The plaintiffs in that case first gave up all right of access and then by way of exception reserved a specific right of access to the highway "by way of service roads and ramps." The Supreme Court again reiterated that a right of access to a public highway is an easement appurtenant to the land and pointed out that the Commission stands in the position of a servient owner with the right to locate an access route under the general rule that where an easement is granted or reserved in general terms, which do not fix a specific location, then the owner of the servient estate has the right in the first instance to designate the specific location of such easement, subject to the limitation that this right be exercised in a reasonable manner with due regard to the rights of the owner of the easement.

In *Petroleum Marketers v. Highway Commission,* 269 N.C. 411, 152 S.E. 2d 508, a right-of-way agreement designated a survey station as an access point. However, this access point was later found to be hazardous to the safety of the traveling public. The Supreme Court held that while the Commission had the power to eliminate such an access point, it could not do so without paying the landowner for his property right. It was noted that the agreement in *Abdalla v. Highway Commission, supra,* provided for access "by way of service roads and ramps", whereas, the agreement there had no such provision. The access point was simply a survey station. The Supreme Court then pointed out:

> "This right of direct access from the plaintiff's land to the highway, whether it existed prior to the agreement *or was created by* it, was an easement appurtenant to the plaintiff's land and was a private property right in the plaintiff, over and above the plaintiff's right, as a member of the public, to use this ramp as a means of getting to the . . . lanes of the highway." (emphasis added)

It was specifically noted that in construing a right-of-way agreement all of the language contained therein is to be considered and that a landowner can rely upon language creating easement rights and property rights greater than those of the general public.

In *French v. Highway Commission,* 273 N.C. 108, 159 S.E. 2d 320, a case involving the same highway improvement projects as the instant case, the Supreme Court stated:

> "It would be, indeed, a strained construction of the Right of Way Agreement to say that the parties by stipulating for a

right of access 'to the proposed highway to be constructed' at the two points in question meant only a right of access to service roads and did not contemplate the construction of and continuance of the crossovers shown upon the plans then in existence and to which the agreement referred. Had the Right of Way Agreement contained no reference whatever to the plaintiff's access to the highway at the points in question, he, along with the rest of the world, would now have the right to travel along the service roads from these points to their points of interchange with the through travel lanes of the highway."

The following language of the Supreme Court is applicable to the present situation:

". . . [T]he plain meaning of the agreement was that the landowner [in this case the original grantors] surrendered whatever claims she might otherwise have had to a direct access to the highway at other points in exchange for a cash consideration and a reservation or grant of a right of direct access to the highway at the designated point."

The Commission there contended that the landowner had all the rights he was entitled to since he had the means of getting on and off the service road. This contention was answered as follows:

"It is clear that the parties did not contract with reference to access to the service road only. The service road is part of the highway, but access to it only was not what the parties clearly intended when they executed and accepted the Right of Way Agreement." See *Realty Co. v. Highway Comm.*, 1 N.C. App. 82, 160 S.E. 2d 83.

[2, 3] The only difference between *French v. Highway Commission, supra,* and the instant case is that in the former the access points abutted the plaintiff's land, while in the latter the access points did not abut the original grantors' tract of land. However, this difference is not a distinction in law. As noted *supra,* the Commission can not only pay money as consideration for a right-of-way agreement, but can grant to the landowner a right of access at a particularly designated point. Under the agreement in question, the original grantors relinquished a right of access to the highway at a point which abutted their land. In lieu thereof the Commission granted them access at Survey Stations 167 + 73.9 and 131 + 70.

The second contention is without merit.

The order of Judge Bailey is affirmed and this cause is remanded to the Superior Court of Robeson County for a determination pur-

suant to law of just compensation for damages, if any, which the plaintiffs may have suffered by reason of the taking of the easement of direct access to the highway at Survey Station 131 + 70, and in this regard, any changes in the access at Survey Station 167 + 73.9 are to be taken into consideration in affixing such damages.

Affirmed.

MORRIS and PARKER, JJ., concur.