SOUTHERN FURNITURE COMPANY OF CONOVER, INC., PLAINTIFF/APPELLANT v. DEPARTMENT OF TRANSPORTATION, DEFENDANT/APPELLEE

No. COA98-819

(Filed 1 June 1999)

**Highways and Streets— successive right-of-way agreements— abutter's rights—access rights appurtenant**

Summary judgment was erroneously granted for defendant in an action which arose from à 1960 right-of-way agreement which succeeded a 1953 right-of-way agreement and created a restricted

access highway, leading to closure of a crossover created under the 1953 agreement which provided access to plaintiff's property. The 1960 agreement only released "abutter's rights" and "access rights appurtenant" to plaintiff's property, but failed to release plaintiff's separate and distinct rights to the crossover. While contradictory evidence external to the agreement suggests the contrary, the clear and unambiguous language of the agreement itself does not release the crossover rights created by the 1953 agreement and therefore cannot bar enforcement of that agreement.

Appeal by plaintiff from judgment entered 17 April 1998 by Judge William H. Freeman in Guilford County Superior Court. Heard in the Court of Appeals 27 April 1999.

*Keziah, Gates & Samet, L.L.P., by Andrew S. Lasine, for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General David R. Minges, for defendant-appellee.*

MARTIN, Judge.

Plaintiff is the owner of a tract of land in High Point, Guilford County, North Carolina, located on the south side of U.S. Highway 29-70. In 1953, plaintiff's predecessors in title, the Clinard heirs entered into a right-of-way agreement (the 1953 agreement) with the State Highway Commission (now defendant Department of Transportation), in which they granted a right-of-way over their property for the construction of U.S. Highway 29-70. The proposed highway split the property retained by the Clinards to the north and the south. The 1953 agreement required the Commission to provide a crossover to enable the Clinards to have access between the portions of their property to the north and south of the highway. The 1953 agreement further required the Commission to build a service road from the Clinard property, along the highway, and extending east to the proposed crossover, in order to insure the Clinard heirs access to the crossover from their own property. It is not disputed that the crossover was built by defendant and that it never abutted the Clinard property. In addition to the crossover, the 1953 agreement restricted the Clinards' right of access to the highway to specific survey stations, corresponding with the ramps that connect the highway to other existing public roads.

In 1959-60, defendant initiated Project 8.15306, converting U.S. Highway 29-70 to a controlled access facility. In connection with this project, defendant acquired additional land from the Clinards by another right-of-way agreement (the 1960 agreement). The 1960 Agreement stated:

> This conveyance is made for the purposes of a freeway and adjacent frontage road and *the grantor hereby releases and relinquishes to the grantee any and all abutter's rights including access rights appurtenant to grantor's remaining property in and to said freeway,* provided however, that such remaining property of the grantor as may abut upon the frontage road shall have access to said frontage road which will be connected to the freeway or other public roads only at such points as may be established by the Commission. Interchange ramps are considered to be part of the freeway and as such are subject to full control of access (emphasis added).

Beyond the reference to "abutter's rights" and "access rights appurtenant to grantor's remaining property," the 1960 agreement made no specific reference to the crossover. The 1960 agreement also provided for construction of a "Closure Road D," connecting the service road along the highway with a public road from the south (Model Farm Road). Included in defendant's appraisals of just compensation for the land acquired by the 1960 agreement was compensation for elimination of all rights of access along the highway, leaving the Closure Road connection to Model Farm Road as the only remaining highway access from the Clinard property to the south.

On 25 July 1990, defendant closed the crossover. In apt time, plaintiff, as successor to the Clinard heirs' title, filed this action seeking a declaration of the parties' rights pursuant to G.S. § 1-253 *et seq.*, specific performance of the 1953 agreement, or alternatively, damages for breach of contract. Defendant Department of Transportation answered asserting *inter alia* the affirmative defenses of sovereign immunity and the release of plaintiff's rights to the crossover under the 1960 Agreement.

Defendant's motion to dismiss on the grounds of sovereign immunity was denied. Defendant appealed to this Court which held that plaintiff's claim for breach of contract was not barred by the doctrine of sovereign immunity and affirmed the denial of defendant's motion to dismiss. *Southern Furniture Co. of Conover, Inc. v. Department*

*of Transportation*, 122 N.C. App. 113, 468 S.E.2d 523 (1996), *disc. review improv. allowed*, 346 N.C. 169, 484 S.E.2d 552 (1997).

On remand, defendant moved for summary judgment in its favor as to all issues. Plaintiff moved for summary judgment in its favor "as to all issues other than damages or the remedy of specific performance . . . ."[1] Plaintiff's motion was denied, and defendant's motion was granted. In the summary judgment order dismissing plaintiff's action, the trial court concluded "as a matter of law that the 1960 right of way agreement, asserted as an affirmative defense by the defendant in this action, eliminated any right of access to the median crossover located thereon which the plaintiff or plaintiff's predecessor may have had under the 1953 agreement." Plaintiff appeals.

---

The issue presented by this appeal is whether the 1960 agreement eliminated plaintiff's rights to the crossover created by the 1953 agreement. As a matter of law it did not, and we reverse summary judgment in favor of defendant and remand for entry of judgment in plaintiff's favor.

When a contract is plain and unambiguous, its interpretation is a question of law for the court. *Department of Transp. v. Idol*, 114 N.C. App. 98, 440 S.E.2d 863 (1994); *International Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 385 S.E.2d 553 (1989). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996).

> The language of the deed being clear and unequivocal, it must be given effect according to its terms, and we may not speculate that the grantor intended otherwise. "The grantor's intent must be understood as that expressed in the language of the deed and not necessarily such as may have existed in his mind if inconsistent with the legal import of the words he has used."

*Parker v. Pittman*, 18 N.C. App. 500, 506, 197 S.E.2d 570, 574 (1973) (quoting *Pittman v. Stanley*, 231 N.C. 327, 56 S.E.2d 657). When terms with special meanings or terms of art appear in an instrument, they are to be given their technical meaning; whereas, ordinary terms are to be given their meaning in ordinary speech. *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 246 S.E.2d 773 (1978); *IRT*

---

1. We interpret plaintiff's motion as one for partial summary judgment as to all issues except the issue of the appropriate remedy, which has not been addressed by the trial court and is not before this Court.

*Property Co. v. Papagayo, Inc.*, 338 N.C. 293, 449 S.E.2d 459 (1994); *Lovin v. Crisp*, 36 N.C. App. 185, 243 S.E.2d 406 (1978).

Both of the phrases found in the 1960 release, "abutter's rights" and "access rights appurtenant" are terms of art to be interpreted as a matter of law. We conclude that the crossover created by the 1953 agreement is not within the scope of either of these terms, and was therefore not released by the 1960 agreement.

## I. Abutter's Rights

The term "abutter's rights" is a legal term of art referring to certain rights of private property owners adjacent to public roads. *See e.g., Department of Transportation v. Craine*, 89 N.C. App. 223, 227, 365 S.E.2d 694, 697, *disc. review denied*, 322 N.C. 479, 370 S.E.2d 221 (1988) ("By statute, an abutter's right of access can be appropriated by the State but it cannot be taken without just compensation."). For the following reasons we hold the 1960 agreement used the term in this special sense and therefore did not release the crossover rights arising under the 1953 agreement.

It is well settled in North Carolina that when a public road is opened adjacent to private property, the owner of the abutting private property has special rights at law regarding access and use of the public road. *Hiatt v. City of Greensboro*, 201 N.C. 515, 160 S.E. 748 (1931); *Wofford v. North Carolina State Highway Commission*, 263 N.C. 677, 681, 140 S.E.2d 376, 379, *cert. denied*, 382 U.S. 822, 15 L.Ed.2d 67 (1965) ("As stated in Hiatt, the owner of land abutting a street has two distinct rights, (1) a public right which he enjoys in common with all other citizens, and (2) a private right which arises from his ownership of property contiguous to a street."); *see also Snow v. North Carolina State Highway Commission*, 262 N.C. 169, 136 S.E.2d 678 (1964); *Sanders v. Town of Smithfield*, 221 N.C. 166, 19 S.E.2d 630 (1942). An abutter's right to access a public road is a right of entry arising by operation of law. *Hiatt, supra*. Common law abutter's rights may be restricted by the Department of Transportation in the development of controlled-access highways by entering into agreements with abutting landowners, compensating them for the loss of the rights of access. *Abdalla v. State Highway Commission*, 261 N.C. 114, 118-19, 134 S.E.2d 81, 84 (1964). Once modified by agreement, the common law abutter's rights are restricted by a valid "Right of Way Agreement" between the Department of Transportation and the landowner. *Id.*

In the present case, the 1953 agreement created a crossover and then limited the right of access to certain survey stations:

[T]he Commission at its own expense will construct a Service Road to the right of Station 180 to 187 where a *cross-over has been provided between lanes of pavement.*

. . . It is further understood and agreed that *other than indicated above,* the undersigned and their heirs and assigns *shall have no right of access to the highway* constructed on said right of way except at the following survey stations: . . . (emphasis added).

By the terms of the 1953 agreement, the crossover was an additional right, distinct from other rights of entry described in the latter part of the grant. The crossover was created by express contract and was not considered merely a right to access the highway.

In *French v. State Highway Commission,* 273 N.C. 108, 113, 159 S.E.2d 320, 323 (1968), the North Carolina Supreme Court interpreted a right of way agreement as creating both access rights and a crossover.

Here, on the contrary, the plans to which the Right of Way Agreement refer, specifically showed a crossover from one service road to the other at each point designated and subsequently the commission constructed those crossovers and maintained them in use for several years. *It is clear that the parties did not contract with reference to access to the service road only* (emphasis added).

The *French* Court considered the crossover as "an easement, which is a property right and which the defendant took from him by the removal of the crossovers and the construction of the fences between the service roads and the through traffic lanes of the highway." *Id.* at 112, 159 S.E.2d at 323. Likewise in the present case, the parties to the 1953 agreement contracted with respect to rights of access distinct from the right to cross the lanes of traffic. The crossover, connecting plaintiff's property from north to south, gave plaintiff rights distinct from common law abutter's rights of access.

The term "abutter's rights" as used in the 1960 release does not include the crossover created by the 1953 agreement. As discussed above, "abutter's rights" are rights of access arising by law. Like the grant in *French,* the 1953 agreement "did not contract with reference

SOUTHERN FURNITURE CO. v. DEP'T OF TRANSP.

[133 N.C. App. 400 (1999)]

to access to the . . . road only." The crossover was more than a right of access, it was a right to cross between lanes of traffic. Also, the crossover did not arise by operation of law. Therefore, the term "abutter's rights" as stated in the 1960 agreement does not include the additional crossover rights created by the 1953 agreement.

Nevertheless, defendant cites *McNeill v. North Carolina State Highway Commission*, 4 N.C. App. 354, 167 S.E.2d 58 (1969), for the proposition that there is no distinction between rights abutting the property which arise by law, and rights created by contract which do not touch the property. *McNeill* is inapposite to the issue before us. The dispute in *McNeill* concerned only rights of access, not distinct crossover rights. Moreover, the issue in *McNeill* was whether the plaintiff should be compensated for the taking of a property right. For the purposes of compensation, it does not matter whether the property right arose by contract or operation of law, or whether the new property right abuts the original property. *Id.* at 360, 167 S.E.2d at 62 (comparing the situation where "the access points abutted the plaintiff's land" and where "access points did not abut the original grantors' tract of land" and concluding that for the purposes of compensating the grantor for restricted access rights, "this difference is not a distinction in law"). However, when determining whether a crossover right, such as the one in the present case, has been released, the distinction between abutter's rights and other kinds of rights is important. For the reasons discussed above, we hold that the "abutter's rights" released by the 1960 agreement do not include the additional crossover rights created by the 1953 agreement.

## II. Access Rights Appurtenant

In addition to "abutter's rights," the 1960 agreement also released "access rights appurtenant to grantor's remaining property in and to said freeway." Defendant also contends that the crossover was an "access right appurtenant" and was thereby released by the 1960 agreement. Again, we disagree.

The crossover created by the 1953 agreement is an easement appurtenant for the purpose of crossing the lanes of traffic. The crossover is "appurtenant" in the sense that it was intended to run with the land and was not merely personal to the grantee. *Brown v. Weaver-Rogers Associates, Inc.*, 131 N.C. App. 120, 505 S.E.2d 322 (1998).

> If the easement is in its nature an appropriate and useful adjunct of the land conveyed, having in view the intention of the parties

as to its use, and there is nothing to show that the parties intended it to be a mere personal right, it should be held to be an easement appurtenant and not an easement in gross.

*Id.* at 123, 505 S.E.2d at 325. Although the crossover is appurtenant, it is not merely an "access right." As discussed above, the crossover is more than a right of access; it is an express easement for the purpose of crossing lanes of traffic. We conclude the 1960 release of the "access rights appurtenant" did not release the express rights to the crossover contained in the 1953 agreement. This conclusion is supported by the fact that the 1960 agreement made no reference to the 1953 crossover right, located off the property, and that the crossover does not appear on the plats or maps incorporated into the 1960 agreement.

Therefore, the 1960 agreement only released "abutter's rights" and "access rights appurtenant" to plaintiff's property, but failed to release plaintiff's separate and distinct rights to the crossover. The trial court therefore erred in its conclusion that the plaintiff's effort to enforce rights under the 1953 agreement is barred by the 1960 agreement.While contradictory evidence external to the 1960 agreement suggests that the Department of Transportation meant for the release to apply to all rights of access in order to create a controlled access facility, and that plaintiff's predecessor may have been compensated with a total release in mind, the clear and unambiguous language of the agreement itself does not release the crossover rights created by the 1953 agreement, and therefore cannot bar enforcement of that agreement.

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c); *Toole v. State Farm Mut. Auto. Ins. Co.*, 127 N.C. App. 291, 294, 488 S.E.2d 833, 835 (1997). There is no genuine issue of material fact with respect to the terms of the 1960 agreement; as a matter of law it did not effect a release of the rights to the crossover created by the 1953 agreement. Therefore, plaintiff is entitled to entry of summary judgment in accordance with its motion.

In its brief and at oral argument, defendant Department of Transportation has attempted to renew its argument that the trial court could have properly dismissed this matter on the grounds of

sovereign immunity. "According to the doctrine of the law of the case, once an appellate court has ruled on a question, that decision becomes the law of the case and governs the question both in subsequent proceedings in a trial court and on subsequent appeal." *Weston v. Carolina Medicorp, Inc.*, 113 N.C. App. 415, 417, 438 S.E.2d 751, 753 (1994) (citing *Transportation, Inc. v. Strick Corp.*, 286 N.C. 235, 210 S.E.2d 181 (1974), and *NCNB v. Virginia Carolina Builders*, 307 N.C. 563, 299 S.E.2d 629 (1983)); *see also Sloan v. Miller Building Corp.*, 128 N.C. App. 37, 41, 493 S.E.2d 460, 463 (1997). Thus we decline to reconsider defendant's argument.

The judgment of the trial court is reversed and this case is remanded for further proceedings to determine the appropriate remedy.

Reversed and remanded.

Judges GREENE and McGEE concur.